## WILLIAM J. FAHEY v. THEODORE TERP.[1]

January 18, 1952.

No. 35,533.

*Kelly & LeFevere,* for relator.
*Mahoney, Morrison & Cragg,* for respondent.

MATSON, JUSTICE.

Certiorari to review a decision of the industrial commission awarding compensation to William J. Fahey, respondent.

---

[1]Reported in 51 N. W. (2d) 273.

The sole issue is whether the evidence sustains the commission's finding that the relationship between Theodore Terp, the employer, and Fahey was that of employer and employe. Employer contends that the evidence as a matter of law requires a finding that respondent was an independent contractor.

■ In Lemkuhl v. Clark, 209 Minn. 276, 277, 296 N. W. 28, 29, we said:

"In determining whether the relationship is one of employe or independent contractor, the most important factor is the right of the employer to control the means and manner of performance. Other factors to be considered are mode of payment, furnishing of materials or tools, control of the premises where the work is to be done, and the right of the employer to discharge the employe-contractor."

In the light of the above rule, it becomes important to ascertain what arrangement was made between Terp, the asserted employer, and Fahey.[2] We turn to the facts.

Terp, who was regularly engaged in the ice business and knew nothing about roofing work, bought an old frame building which required certain repairs, inclusive of the installation of a new roof. Fahey, having heard that Terp needed a roofer's services, made an appointment to meet him at the building. Fahey contends that he then entered into an agreement whereby he was employed and paid by the hour at the regular union scale. Terp testified, however, that Fahey agreed to do the work on a contract basis of *$50 for the entire job,* subject to the furnishing by Terp of a helper and certain materials. Edward Wilson, who later helped lay the roof under the supervision of Fahey, was present when Terp and Fahey made their agreement, and he heard Fahey say to Terp that he would take the *contract* for $50. Carl Nelson, the cement contractor, who had known Fahey for seven or eight years, testified that in the course of the roofing work Fahey told him that he was going to get *$50 for the job* and that he was going to make pretty good money. Before the roofing work had been completed, Fahey fell down and burned

[2]Larson v. Le Mere, 220 Minn. 25, 32, 18 N. W. (2d) 696, 700.

his arm with hot tar. Although he tried to finish the job, he could not complete it entirely because of pain. Fahey, desiring to go to his own physician, was taken part way there by Terp in his automobile. When they parted, Terp handed him a check for an even $50. Fahey admitted that, according to the union scale of $2.15 an hour and the number of hours worked, he would not have had as much as $50 coming to him on an hourly basis. He said, however, that Terp included an additional amount for cab fare.

■ At the time the work was undertaken, Fahey was regularly employed about four days a week by a sheet-metal and roofing concern. He testified, however, that, outside of his regular employment, he sometimes *on his own* took small roofing jobs *by the job,* but that he had to be careful because it was contrary to union regulations to take jobs as a contractor, and the union had made it hot for him. In other words, although he belonged to the sheet-metal worker's union and regularly worked as an employe on sheet-metal and roofing jobs, he did from time to time, on a part-time basis, pursue as an independent calling the distinct occupation or business of a roofing contractor. Where the work performed by the actor coincides in character with that of his independent calling or separate business, there is a basis for an inference that the right of control as to the manner and means of performing the work was not retained by the employer. The converse thereof, of course, is also true. Although Fahey, for his regular occupation, engaged in roofing work as an employe for another, he contemporaneously therewith took roofing jobs on a contract basis when he was not working a full week. See, Restatement, Agency, § 220(2)(b). The work he performed for Terp was a small job which could be completed over the week end and was ideally adapted to a part of his independent-contractor activities. As held by Lemkuhl v. Clark, 209 Minn. 276, 296 N. W. 28, *supra,* the right of control as to the manner and means of performance is an important factor in ascertaining whether Fahey was an employe or an independent contractor. Aside from the inference to be drawn from his separate calling as a part-time contractor, the evidence otherwise indicates

that the right of control, as well as its actual exercise, was vested in him. He prescribed what supplies were needed, how Terp himself was to perform his part of the work in keeping the tar hot, and told Wilson, the helper, what to do and how to do it. In every respect, Fahey controlled the manner and means of performance. It is true that Terp requested Fahey to stick to the job and not leave the work to buy beer, because he wanted the job promptly completed. This request by Terp does' not negative Fahey's right of control, but is wholly consistent with a contract right to have the work promptly finished as agreed. Terp had other repair work which could not be undertaken until the leaky roof had been repaired.

■ Fahey furnished only the hand tools of a roofer, namely, a hammer, a roofing knife, and a pair of snips. Terp supplied all materials such as paper, asphalt, nails, mops, heating barrels, and ladders. It goes without saying that the furnishing of materials and tools is one of the factors which may be considered in determining the actual relation of the parties. See, Graf v. Montgomery Ward & Co. Inc. 234 Minn. 485, 49 N. W. (2d) 797. Here, the bulk of the materials and equipment was supplied by Terp. It is not to be overlooked, however, that the factors or tests which are employed as aids in ascertaining the true relation of the parties are aids only and not ends in themselves, and they should always be applied in the light of the evidence as a whole and not as instruments of dissection whereby the evidentiary picture is torn apart and rebuilt in a manner foreign to the facts as they are actually related to each other. In summary, if we start herein with the original arrangements made between Terp and Fahey, there can be little question that the evidence as a matter of law establishes that the agreement between the parties was that Fahey should work on a contract basis for a lump sum of $50. Although Fahey testified that he was to work on an hourly basis at a union scale of $2.15 per hour, his testimony was not merely contradicted directly by Terp but also by the third party who overheard part of their conversation. Furthermore, Fahey told another disinterested witness, the cement contractor, that he contracted to do the work for $50.

The manifest and overwhelming preponderance of the evidence pointing to an independent contractor relationship does not rest, however, upon any mere counting of witnesses. Of no little significance is the fact that the check given in settlement was for exactly $50, and that such sum could not be accounted for on an hourly basis. If Terp had intended part thereof for cab fare, it is not reasonable to assume that he would have driven Fahey part way to the doctor, but that he would have ordered and paid for a cab in the first instance. The fact that Fahey admittedly, outside of his regular employment, had on other occasions taken small roofing jobs on a contract basis is of additional significance. As already pointed out herein, the control of the means and the manner of performance was vested in Fahey, and this further substantiates the existence of an independent-contractor status.

The findings of the industrial commission—even though, as in the present case, concurred in by only a majority of the commissioners—are entitled to great weight and will not be disturbed on appeal unless they are manifestly contrary to the evidence. In this case, the findings are manifestly contrary to the evidence as a whole, and there must be a reversal. In this determination we have not overlooked the fact that Terp—who carried no compensation insurance—paid the medical bill, as well as certain installments of compensation. In the light of other controlling evidence, little probative value is to be attached to these payments as evidence of an admission by Terp of an employer-employe status.

The decision of the commission is reversed.

Reversed.