## WALTER S. MOUNT v. CITY OF REDWOOD FALLS AND ANOTHER.

108 N. W. (2d) 443.

March 30, 1961—No. 38,114.

*Scholle & Schweiger,* for relators.
*Berens & Rodenberg,* for respondent.

MURPHY, JUSTICE.

This matter is before us on certiorari from the Industrial Commission. The commission awarded the respondent, Walter S. Mount, compensation for injuries arising out of and in the course of his employment as manager of the airport for the city of Redwood Falls. The relators contend that the commission erred in finding that Mount was an employee of the city. They claim that at the time the accident happened in which respondent was injured he was engaged in work as an independent contractor in a private business enterprise over which the city had no control.

From the record it appears that the respondent, Mount, was employed by the city of Redwood Falls in February 1955 as manager of its municipal airport. At that time he was the owner of the land upon which the hangar with adjacent living quarters was located. In addition he owned an easement which provided an entrance and exit between the property and the highway. The city of Redwood Falls owned the airstrip and the adjoining land. On April 28, 1958, Mount sold his property, including the hangar and living quarters, to the city.

From the time he was originally employed as manager or operator of the airport, his duties consisted of checking and replacing beacon lights when necessary; notifying the city street department when the runways were in need of cutting; checking and filling gopher holes in the runways; and assisting in the parking and tying down of planes. In addition he sold gas and oil directly to operators of planes who used the airport facilities. These supplies were purchased on his own account. He was a mechanic and repaired planes in need of service. The money he made from the sale of supplies and from the repair of planes he retained and made no accounting of it to the city. He also retained rental received from the storage of private planes in the hangar. Prior to the time he sold the hangar and other property to the city, he was paid a wage of $50 per month. After he sold the property to the city, he was told that he would no longer be paid the monthly wage. It was apparently the plan of the city to make new arrangements with reference to the management of the airport. There was evidence in the record from which the commission could find

that there was an agreement that after the sale Mount was to continue, temporarily at least, as manager of the airport, doing the same work and performing the same duties as he had prior to the sale. In lieu of the $50 salary, he was to have the use of the dwelling on the premises without charge and to continue to have such income as he would derive from sales and services to those using the airport.

On January 16, 1959, a government plane landed at the airport. It was in need of service. It was an extremely cold day, and the oil needed in furnishing this service had to be warmed in order to make it more fluid. Mount placed some cans of oil on top of an oil burner located in the living quarters. Although the findings of the commission do not indicate the cause of the fire which followed, it appears from the record that an explosion occurred spraying oil throughout the residence and setting it ablaze. In attempting to rescue his children from the dwelling and in moving planes out of the hangar to save them, Mount was burned about the neck and face. One of his six children was killed. The nature of his damages and the amount of the award are not involved in this appeal.

It is the contention of the city that Mount was engaged in the pursuit of two distinct and separate occupations. It concedes that he was an employee of the city of Redwood Falls "only with respect to the duties that he performed on the airstrip." It argues that the accident occurred while Mount was engaged in a private business transaction in making repairs to a government plane and that he was working independently in a personal venture over which the city had no control. There was no written contract as to terms of employment, and the oral testimony on that subject is meager and does not fully spell out the true relationship of the parties. The city contends that the evidence compels the inference that in performing those particular duties from which he derived a remuneration from others Mount was working as an independent contractor.

The issue as to whether an injured workman is an employee within the meaning of the Workmen's Compensation Act, or an independent contractor not within the operation thereof, has arisen under a great variety of fact circumstances and has been discussed in numerous

decisions of this court.[1] Each controversy involving the status of an injured workman must be decided on its peculiar facts, and ordinarily no one feature of the relationship between him and his employer is determinative. The independent contractor, as distinguished from an employee, performs work according to his own methods and without being subject to the control of his employer, except as to the result of the work. As to the element of control, we have held that the right to control rather than the exercise of the right is decisive. In addition to the right of control, other factors may be considered, including mode of payment, furnishing of materials and tools, control of the premises where the work is done, and the right of the employer to discharge the employee or contractor.[2] From our authorities it appears that, while the tests above named may be used as aids in ascertaining the true relationship of the parties, there is no rule of universal application. The tests should be applied in light of the evidence as a whole "and not as instruments of dissection whereby the evidentiary picture is torn apart and rebuilt in a manner foreign to the facts as they are actually related to each other." Fahey v. Terp, 235 Minn. 432, 435, 51 N. W. (2d) 273, 275.

In Aleckson v. Kennedy Motor Sales Co. 238 Minn. 110, 114, 55 N. W. (2d) 696, 699, in discussing the element of control, we pointed out:

"* * * The degree of control exercised varies according to the

---

[1]Korthuis v. Soderling & Sons, 218 Minn. 342, 16 N. W. (2d) 285; Bergstrom v. Brehmer, 214 Minn. 326, 8 N. W. (2d) 328; Graf v. Montgomery Ward & Co. 234 Minn. 485, 49 N. W. (2d) 797; Fahey v. Terp, 235 Minn. 432, 51 N. W. (2d) 273; Rosvold v. Independent Consol. School Dist. No. 102, 251 Minn. 297, 87 N. W. (2d) 646; Christopherson v. Security State Bank, 256 Minn. 191, 97 N. W. (2d) 649; Sayre v. Johnson, 218 Minn. 586, 17 N. W. (2d) 76; Larson v. Le Mere, 220 Minn. 25, 18 N. W. (2d) 696; Judd v. Sanatorium Comm. 227 Minn. 303, 35 N. W. (2d) 430; Oestreich v. Lakeside Cemetery Assn. 229 Minn. 209, 38 N. W. (2d) 193; Hansen v. Adent, 238 Minn. 540, 57 N. W. (2d) 681; Angell v. White Eagle Oil & Refining Co. 169 Minn. 183, 210 N. W. 1004; Lemkuhl v. Clark, 209 Minn. 276, 296 N. W. 28.

[2]Ibid.

nature of the work. Although the right of control exists, the work in a particular case may be of a character which neither requires nor justifies its exercise."

In Christopherson v. Security State Bank, 256 Minn. 191, 194, 97 N. W. (2d) 649, 651, we said:

"It is the right of control, not the exercise of it, that is of importance. * * * No test or group of tests can be all-inclusive. After all, tests which determine the legal relationship of the parties must be used as guide posts and not as hitching posts. In line with the liberal construction accorded workmen's compensation acts, we should not hold that a relationship exists that will defeat payment of compensation if the evidence will reasonably sustain a determination that a relationship exists which will permit recovery."

We recognized in Koktavy v. City of New Prague, 246 Minn. 550, 75 N. W. (2d) 774, that the issue of whether an employer-employee relationship exists in a particular case frequently presents a difficult question, and no general rule can be laid down to cover all situations. We pointed out in that case, however, that in arriving at the determination of the issue (246 Minn. 553, 75 N. W. [2d] 777):

"* * * It should not be overlooked, however, that we are dealing with an act which is highly remedial and humanitarian in purpose and which accordingly must be given a broad, liberal construction in the interests of the workman."

While the question presented is a close one, an examination of the record satisfies us that there is sufficient evidence to support the commission's finding that Mount was an employee of the city of Redwood Falls at the time of the accident. At that time he was acting as the agent and employee of the city of Redwood Falls in the management and operation of the airport. His name was registered in that capacity by the city of Redwood Falls with the Federal Aviation Agency. The services which Mount performed were incidental to the operation and maintenance of the airport as a facility of the city of Redwood Falls. They were not provided to the public at large but were limited to those who were expected to use the airport. The services were the

usual and necessary services an airport is expected to provide. In furnishing those services, Mount was engaged in the successful operation of the airport as a facility of the city. The sale of gasoline and the furnishing of repair work was an integral part of the municipal project of maintaining and operating the airfield. The fact that Mount received compensation from others for repair work did not necessarily make such work a separate business.

Moreover, the city's right of control over Mount's activities in the sale of supplies and furnishing of services is found in the circumstance that those activities were carried on upon the premises belonging to the city and the further fact that he could have been dismissed from his employment at any time.

A somewhat analogous situation occurred in Bieluczyk v. Crown Petroleum Corp. 134 Conn. 461, 58 A. (2d) 380, where the court observed that the fact that an employee retained all of the compensation received from the performance of work for others auxiliary to duties he was hired to perform for the employer did not conclusively establish that he was not the employer's agent. The court held under similar circumstances that the two types of work performed by the employee were not independent activities but comprised part of a single enterprise. We think the same reasoning supports the commission's finding in the case before us. See, also, Pinson v. Industrial Comm. 79 Ariz. 21, 281 P. (2d) 962.

Respondent is allowed $250 attorneys' fees.

Affirmed.

MR. JUSTICE OTIS, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.