## JOSEPH HAMMES v. BILL SUK, d.b.a. BILL SUK REALTORS, AND ANOTHER.

190 N. W. (2d). 478.

September 24, 1971—No. 42538.

*Price & Dunlap* and *William H. Price, Jr.,* for relators.
*Plunkett & Peterson* and *Dennis R. Peterson,* for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Rogosheske, and Kelly, JJ.

KELLY, JUSTICE.

Certiorari to review a decision of the Workmen's Compensation Commission adopting a compensation judge's determination that Joseph Hammes was an employee of relator Bill Suk at the time he was injured and not an independent contractor. The issue is whether the decision of the commission is unsupported by substantial evidence in view of the entire record. We affirm.

Joseph Hammes had worked in the Rochester area for many years as a carpenter for various employers. He was a member of the Rochester Carpenters Union, Local No. 1382, and did not belong to any organization of employers or contractors. As was the custom in Rochester within the carpentry trade, Hammes supplied his own tools, and when special tools were needed, they were rented and charged to Suk.

In 1964 Hammes commenced work on two four-plexes owned by Suk, a home builder and realtor. Hammes testified that he received $5 per hour in 1964 and that it was eventually increased to $6 per hour. Suk testified that a firm contract price of $3,000 per four-plex was agreed upon after Hammes had reviewed the plans and that initially Hammes was to be paid the contract price in two equal installments but that he later requested weekly checks in order to pay his bills. Suk also stated that a weekly payment of $250 was agreed upon and that the balance of the contract price plus a bonus of $100 was paid when each building was completed.

The commission recognized that there was a sharp conflict in the testimony of Suk and Hammes as to the mode of payment. They did not accept the testimony of either party completely but did conclude that Hammes was paid $250 per week for a reasonable work week, which would equal $5 to $6 per hour.

Hammes built houses for Suk from 1964 to 1967, but he also worked for other employers. If Hammes did repair work on any of Suk's buildings, he was paid an hourly wage and Suk provided the materials on all the projects. In August of 1967, Hammes agreed to work exclusively on Suk's projects when the latter assured Hammes that he would have enough wintertime work for Hammes. At the time this agreement was reached, Suk had become angry with Hammes upon learning that Hammes was working on a house for someone else rather than on an addition to an office building owned by Suk. He contacted Hammes and said, "I cannot afford to have you building for somebody else, if you are going to do my work I want you to do my work." After the talk, Suk understood that "they agreed they would not take any more houses for anybody else, that they would do my work." Mr. Suk had already obtained somebody else to work on the office building when Hammes failed to start the job, but Hammes was allowed to take over and complete the construction and the other carpenters were dismissed. From then on Hammes worked exclusively on Suk's buildings.

On one occasion Suk fired Hammes. During construction of a house, a misunderstanding developed with the owner and Suk was called to the job site. Suk told Hammes, "Pick up your tools and get them off of here, I'm going to have to get somebody else to finish this job." However, the misunderstanding was cleared up and Hammes remained to finish the construction. Nowhere in the record is there any indication that Suk intended to pay a measure of damages had he fired Hammes. He concedes only that he would have had to pay for the percentage of work that Hammes had completed.

On March 6, 1968, Hammes fell from a scaffolding attached to a building which was being constructed for Suk. Hammes was injured and applied for workmen's compensation.

According to Minn. St. 15.0425, our scope of review is to determine if the commission's decision is unsupported by substantial evidence in view of the entire record as submitted.[1]

On review, the evidence upon which the commission determined the facts and made its findings must be viewed in the light most favorable to such findings. It is not our function to retry the case on appeal, nor to determine whether the decision of the commission is correct or even preferable to another. Rather, it is this court's function to ascertain whether the decision has sufficient basis of inference, reasonably drawn from the facts. Saholt v. Northwest Airlines, Inc. 290 Minn. 393, 188 N. W. (2d) 772.

This court, on frequent occasions, has discussed the conditions under which an independent contractor relationship exists. In general, it may be said that an independent contractor is one who, in the exercise of an independent employment, contracts to do a piece of work according to his own methods and is subject to his employer's control only as to the end product or final result of his work. On the other hand, an employer's right to direct and control the method and manner of doing the work is the most significant aspect of the employer-employee relation-

---

[1] See, Strei v. Church of St. Joseph, 290 Minn. 565, 188 N. W. (2d) 879.

ship, although it is not the only factor entitled to consideration. Also indicative of an employer-employee relationship are the employer's right to discharge the workman, control of the premises by the employer, payment by the hour rather than by the job, and the furnishing of materials and tools by the employer. Guhlke v. Roberts Truck Lines, 268 Minn. 141, 128 N. W. (2d) 324.

It is our opinion that, measured by the foregoing standards, the decision of the commission is supported by substantial evidence in view of the record submitted.

There is evidence which tends to negate an employment relationship, including the facts that there were no deductions or withholding for taxes or social security from the checks Hammes received and no set working hours were prescribed. His tax returns indicated that he was "self-employed," and he took many business deductions. Likewise, his medical records at Mayo Clinic listed him as self-employed.

On the other hand, the record discloses that Hammes was being paid between $5 and $6 per hour. Mr. Suk directed Hammes with respect to what work was to be done, and he apparently felt he had the right to discharge Hammes. The premises were controlled by Suk, who ordered the necessary materials and contacted the plumbers, electricians, and others when it was time for them to work on a building and who also told Hammes which job was to receive priority and when to commence work on a project. In addition, an independent contractor normally would be obligated to hire someone else to finish the job after he was injured. There is evidence on the record that Suk hired another carpenter to finish the building which Hammes was constructing at the time of the accident and that he paid him by the hour. These circumstances indicate that there was an employee-employer relationship.

Relators rely on evidence that Suk never told Hammes how to build anything. This is likely since Hammes had been engaged in carpentry work for many years, but the fact that an employee

may use his own judgment in the manner of performing his work does not of itself make him an independent contractor. In this case the important consideration is that, even though the employer left the manner of building the houses largely to the skill and judgment which the employee possessed, he still had the right to control the method and means of doing the work, and the employee was at all times subject to any instructions or directions from the employer. Mr. Suk determined the order in which the buildings were to be completed, made the decision as to when Hammes would do the repair work on buildings, and moved Hammes around to complete rush jobs. Only Suk could order changes made on the buildings.

Relators rely on Fahey v. Terp, 235 Minn. 432, 51 N. W. (2d) 273. We have examined that case and are satisfied that it is distinguishable on the facts. In that case, there was corroborating evidence that there was a lump sum figure to be paid Fahey for the job, which amount was paid although he was injured before the job was completed.

In line with the liberal construction accorded workmen's compensation acts, we should not hold that a relationship exists that will defeat payment of compensation if the evidence will reasonably sustain a determination that an employer-employee relationship exists which will permit recovery. Christopherson v. Security State Bank of Oklee, 256 Minn. 191, 97 N. W. (2d) 649. This case turns on a question of fact, and we conclude that the commission's decision is supported by substantial evidence in view of the entire record submitted.

Respondent is allowed $250 attorneys' fees.

Affirmed.

MR. JUSTICE OTIS took no part in the consideration or decision of this case.