Donald WANGEN, Respondent,

v.

CITY OF FOUNTAIN, Minnesota, et al., Relators.

No. 46616.

Supreme Court of Minnesota.

June 10, 1977.

Hoversten, Strom, Ryan, Johnson & Rysavy, Donald E. Rysavy and Kenneth M. Strom, Austin, for relators.

Dennis R. Peterson, Rochester, for respondent.

MacLAUGHLIN, Justice.

Relators seek review of a decision of the Worker's Compensation Court of Appeals awarding respondent benefits for temporary total and permanent partial disability. The only issue raised on appeal is whether respondent at the time of his accident was an employee of the relator city of Fountain or an independent contractor. Because we conclude that respondent was an independent contractor, we reverse.

Respondent, Donald Wangen, is the proprietor and sole employee of Don's Plumbing and Heating in Lanesboro, Minnesota. As a part of this business he owns his warehouse, truck, and inventory. He uses his own tools and bills his customers on invoices for Don's Plumbing and Heating. He lists his business in the telephone directory under "Plumbing Contractors," and a sign in front of his place of business has similar identification.

Sometime in 1974, Ed Meyers, a plumber in Fountain, informed the city council of Fountain that he no longer wished to do some of the city's work. In June 1974, one of the councilmen called respondent to tell him there were some water system leaks in need of repair and requested that respondent do the work. Respondent initially indicated that he had other work to do but that he would do the repairs when he could. On July 4, 1974, the Fountain city clerk encountered respondent and asked when he would be available. Respondent said he would do the work as soon as he could. Respondent performed four jobs for the

city in July. He spent a total of 16¼ hours on these jobs and billed the city $8 per hour, which included the time taken for the one-way trip from his premises to the job site. He also billed the city for the use of his own materials. He did not submit a written bid or estimate before making the repairs. He was paid the full amount billed, without any deduction for taxes.

Respondent did this work with the help of Gordon Rogstad, a part-time city maintenance man,[1] and Warren Vitse, a contractor and backhoe operator. Rogstad's duties were to inspect the water system for problems and report those problems to the city council. At that point a person from the council would contact someone to do the repairs. Rogstad's duties thereafter were to be at the repair site at the time the work was done to show the repairmen the location of the problem, turn the water on and off before and after the repair was made, and contact other utilities if something had to be located or moved. He sometimes assisted with shoveling or pulling pipe. Rogstad had no special knowledge of plumbing repairs.

On August 19, 1974, after a request from the city, respondent attempted to perform a fifth job, the replacement of a water main under some railroad tracks. While he was in an excavation, the bank collapsed, injuring his ankle.

The compensation judge held that respondent was an independent contractor and denied compensation. Among other things, the compensation judge observed as follows:

"Mr. Wangen's work for the City was just another job in his plumbing business. He billed the City as he would any other customer. He even charges a sales tax on the billing in July, 1974. Some of the parts came from his own stock. For his regular customers in Lanesboro he charges $6.00 per hour. The only difference for the City of Fountain was that he charged $8.00 per hour. As in his business, he charged his hourly rate from the time he left the shop until he reached the job. It would be highly unusual for an employee to charge his employer $8.00 an hour to get to work. Payment for the jobs for the City were made by check and deposited in his business account."

The compensation court reversed with a short memorandum as follows:

"The tests have been stated in numerous cases. *Guhlke v. Roberts Truck Lines, Inc.*, 268 Minn. 141, 128 N.W.2d 324, 23 W.C.D. 175. As we have previously stated, regardless of the easiness of stating the tests, the area is one of jungle and the cases are irreconcilable. And in the instant case, there are factors in favor of both sides. However, we believe that there is probably a little more basis in the instant case for holding the petitioner an employee than an independent contractor. The key factors in his favor, on this job, we believe are: 1) he never really agreed to accomplish a specific job at an agreed price; 2) he was doing a repair job at an hourly rate, and working in conjunction with the Village man, Rogstad, who, we believe, could have told him what to do and discharged him at any time; 3) he apparently charged no profit for the materials and some of these materials the City would have been expected to secure if it had had an account with the supplier."

■ This court has frequently stated that the following factors are to be considered in determining the existence of an employment relationship: (1) The right to control the means and manner of performance; (2) the mode of payment; (3) the furnishings of material or tools; (4) the control of the premises where the work is done; and (5) the right of the employer to discharge. *Duetsch v. E. L. Murphy Trucking Co.*, Minn., 239 N.W.2d 462 (1976); *Guhlke v. Roberts Truck Lines*, 268 Minn. 141, 128 N.W.2d 324 (1964). The most important of these factors is the right to control the means and manner of performance, *Duetsch v. E. L. Murphy Trucking Co. supra.*

1. Rogstad received a base salary of $200 per month from the city of Fountain.

■ This court does not lightly overturn the findings of the compensation court. See, e. g., *Zappa v. Charles Manufacturing Co.*, 260 Minn. 217, 109 N.W.2d 420 (1961). However, we feel compelled to do so in this case. It is undisputed that respondent operates his own business, and the city engaged his services in the same manner as any customer would. Respondent was free to do the work when he pleased and in any manner he saw fit. Rogstad did little more than point out the location of the leaks. Although it is the right to control the details of the work rather than the actual exercise of that right that determines employment, we see no basis for an inference that Rogstad was in a position to supervise the details of the work. Respondent is a skilled artisan, familiar with plumbing; Rogstad is not. *Fahey v. Terp*, 235 Minn. 432, 51 N.W.2d 273 (1952).

■ Prior cases of this court have recognized that in some circumstances a skilled artisan can be an employee although the employer exercises no supervision over the details of the work, *Hammes v. Suk*, 291 Minn. 233, 190 N.W.2d 478 (1971); *Christopherson v. Security State Bank of Oklee*, 256 Minn. 191, 97 N.W.2d 649 (1959). These cases should be narrowly confined to their facts. Where, as here, a skilled artisan holds himself out to the public as an independent businessman willing to work for anyone and performs a job within the scope of his expertise, independent of any detailed supervision, only in extraordinary circumstances can he be considered an employee.[2] We will not attempt to define what extraordinary circumstances will create an employment relationship in such a case, but we do not find them present here.

■ There is no doubt that the Worker's Compensation Act should be liberally construed. However, there must be limitations on the findings of an employee-employer

relationship in cases in which the facts will not support such a relationship. It is interesting to speculate as to the conclusion that would have been reached in this case had the respondent sued the city of Fountain for damages based upon negligence of the city, with the city defending on the ground that respondent was an employee and, therefore, precluded from bringing such a negligence action. It seems clear that such a defense would have encountered severe difficulties.

We have concluded that liability for a worker's compensation claim under the circumstances of this case was never anticipated or intended by the legislature. The five factors mentioned earlier in this opinion are meant to be nothing more than an articulation of what common sense indicates. If not so used, there will be nothing left of the dichotomy between an employee who is entitled to benefits of the act and an independent contractor who is not.

Reversed.

SHERAN, Chief Justice (dissenting).

While the evidence in support of the compensation court's finding that an employee-employer relationship existed at the time of the injury is minimal, it is marginally adequate in my opinion. On this basis I would affirm.

YETKA, Justice (dissenting).

The standards to be employed in determining whether one is an employee or an independent contractor were detailed in *Guhlke v. Roberts Truck Lines*, 268 Minn. 141, 143, 128 N.W.2d 324, 326 (1964), where the court said:

" * * * [T]he factors applied in testing the relationship are: (1) The right to control the means and manner of performance; (2) the mode of payment; (3) the furnishing of material or tools; (4)

---

**2.** 1A Larson, Workmen's Compensation Law, § 44.20, states, in part, as follows: " * * * An owner, who wants to get work done without becoming an employer, is entitled to as much control of the details of the work as is necessary to insure that he gets the end result

from the contractor that he bargained for. In other words, there may be a control of the quality or description of the work itself, as distinguished from control of the person doing it, without going beyond the independent contractor relation."

the control of the premises where the work is done; and (5) the right of the employer to discharge. In determining whether the status is one of employee or independent contractor, the most important factor considered in light of the nature of the work involved is the right of the employer to control the means and manner of performance." [1]

Most of the decisions on this question by this court have found an employee-employer relationship to exist.[2] In *Christopherson v. Security State Bank of Oklee*, 256 Minn.

1. Although the issue was not presented in this case, I would urge that the "right-of-control" test (Restatement, Agency 2d § 220) presently used to determine whether a worker is an employee or an independent contractor in workers' compensation cases be replaced with a "relative nature of the work" test.

The concept of "employee" is not a static one, remaining resolute in dimension from social context to social context. The meaning it is given must be measured by the purpose it is meant to serve. Continued reliance on the common-law interpretation of employee vis-a-vis independent contractor is unfortunate. "Employee" in common-law tort situations and "employee" in worker's compensation situations serve different social ends. The main function of the "employee" concept at common law was to serve as a means of delimiting the scope of vicarious liability of an employer to a third party. In such a situation the right-of-control test adequately serves the societal goals of vicarious liability. Different considerations, however, apply to worker's compensation as explained by Professor Arthur Larson in his treatise on worker's compensation: " * * * [A master's vicarious tort] liability arose out of detailed activities carried on by the servant, resulting in some kind of harm to a third person. The extent to which the employer had a right to control these detailed activities was thus highly relevant to the question whether the employer ought to be legally liable for them. * * *

"By contrast, compensation law is concerned not with injuries *by* the employee in his detailed activities, but with injuries *to* him as a result not only of his own activities (controlled by the employer as to details) but of those of co-employees, independent contractors and other third persons (some controlled by the employer, and others not). To this issue, the right of control of details of his work has no such direct relation as it has to the issue of vicarious tort liability." (1A Larson, Workmen's Compensation Law, § 43.42.)

Independent contractors are theoretically excluded from coverage under the worker's compensation acts because they are entrepreneurs. See, Wolfe, *Determination of Employer-Employee Relationships in Social Legislation*, 41 Col.L.Rev. 1015, 1022. See, also, Wis.Stat.Ann. § 102.07(8). They do not need another entrepreneur to distribute the risks of employment which more logically should be distributed by the business from which they originate. This concept breaks down, however, when the right-of-control test is rigidly applied. See, e. g., 1A Larson, Workmen's Compensation Law, § 45.-10; Comment 10, U.C.L.A.L.Rev. 161, 171.

To place the application of the worker's compensation acts more in line with the spirit of its enactment, a "relative nature of work" or economic-reality test has been developed. Larson explains it in these terms:

"The theory of compensation legislation is that the cost of all industrial accidents should be borne by the consumer as a part of the cost of the product. It follows that any worker whose services form a regular and continuing part of the cost of that product, and whose method of operation is not such an independent business that it forms in itself a separate route through which his own costs of industrial accident can be channelled, is within the presumptive area of intended protection." (1A Larson, Workmen's Compensation Law, § 43.51.)

Larson further states:

"This test, then, which for brevity will be called the 'relative nature of the work' test, contains these ingredients: the character of the claimant's work or business—how skilled it is, how much of a separate calling or enterprise it is, to what extent it may be expected to carry its own accident burden and so on—and its relation to the employer's business, that is, how much it is a regular part of the employer's regular work, whether it is continuous or intermittent, and whether the duration is sufficient to amount to the hiring of continuing services as distinguished from contracting for the completion of a particular job." (1A Larson, Workmen's Compensation Law, § 43.52.)

See, generally, 1A Larson, Workmen's Compensation Law, § 45; Comment, 10 U.C.L.A.L. Rev. 161; 37 Ore.L.Rev. 88. See, also, Stevens, *The Test of the Employment Relation*, 38 Mich. L.Rev. 188, 189.

2. Under the decisions in this state, an employee-employer relationship was found to exist in the following cases: *Lynch v. Hutchinson Produce Co.*, 169 Minn. 329, 211 N.W. 313 (1926) (well driller working without supervision on an hourly basis under an arrangement terminable at will); *Bergstrom v. Brehmer*, 214 Minn. 326, 8 N.W.2d 328 (1943) (worker furnishing his own equipment); *Bolin v. Scheurer*, 210 Minn. 15, 297 N.W. 106 (1941) (worker performing work of the kind ordinarily performed by independent contractors); and *Lynch v. Hutchinson Produce Co. supra*, and *Farnam v. Linden Hills Congregational Church*, 276 Minn. 84, 149 N.W.2d 689 (1967) (worker hiring a helper).

191, 194, 97 N.W.2d 649, 651 (1959), the court expressed its approach to this question as follows:

" * * * No test or group of tests can be all-inclusive. After all, tests which determine the legal relationship of the parties must be used as guide posts and not as hitching posts. In line with the liberal construction accorded workmen's compensation acts, we should not hold that a relationship exists that will defeat payment of compensation if the evidence will reasonably sustain a determination that a relationship exists which will permit recovery."

The compensation court placed considerable weight on the role of Rogstad in the relationship between the city and respondent. In a memorandum accompanying the decision, one commissioner stated that the board believed that Rogstad could have told respondent what to do and could have discharged him at any time.

Rogstad's presence was of course necessary in the repairs process. Someone from the city had to communicate to Vitse and respondent the location and nature of any problem and to some extent coordinate their activities. While the city council certainly could have discharged respondent, this alone is not determinant of the question of control. *Geerdes v. J. R. Watkins, Co.*, 258 Minn. 254, 103 N.W.2d 641 (1960).

Respondent was independently involved in a plumbing and heating business. This court has held that "[w]here the work performed by the actor coincides in character with that of his independent calling or separate business, there is a basis for inference that the right of control as to the manner and means of performing the work was not retained by the employer." *Fahey v. Terp*, 235 Minn. 432, 434, 51 N.W.2d 273, 274 (1952). However, in *Christopherson v. Security State Bank of Oklee*, 256 Minn. 191, 194, 97 N.W.2d 649, 651 (1959), the court stated that "the mere fact that a workman skilled in a certain type of work knows more about the work than the one who employs him does not determine which relationship exists."

In *Bolin v. Scheurer*, 210 Minn. 15, 297 N.W. 106 (1941), the court reversed the determination of the compensation commission that Bolin, the injured employee of Scheurer, an excavation contractor, was an independent contractor vis-a-vis the city of Mankato. Scheurer had solicited excavation work as a part of a city project to reduce street levels and install curbs and gutters. As he was indebted to the city, it was agreed that he would be given enough work to pay his debt. The court cited several factors in determining that Scheurer and his employee Bolin were employees rather than independent contractors. First, there was no definite agreement as to the extent or duration of the work. Second, the city had full authority to have the excavation work done by others. Third, absent from their overall relationship was an obligation upon Scheurer to bring about some end result or objective. Finally, the city had an unfettered right of discharge or termination.

While the facts of *Bolin v. Scheurer, supra*, are somewhat similar to the case before the court, there was greater control of the means and manner of performance. This is reflected in the following excerpt of the court's opinion:

" * * * Nevertheless, to an important degree, the city, through its street foreman, did supervise the course of performance by indication of the depth of excavation desired and the place of deposit wanted. * * * Moreover, had any issue arisen between Mankato and Scheurer as to method, manner, or details of performance, the city, through its reservation of power to control and supervise the progress and direction of the work, could have dictated the decision." (210 Minn. 18, 297 N.W. 107).

Where the injured party is a skilled artisan doing work on a job-by-job basis, evidence of any real right of control is generally absent. However, in instances where the injured party's services are a recurring and integral part of the serviced party's business, liability for compensation benefits should be found despite the absence of con-

trol. See, 1A Larson, Workmen's Compensation Law, § 45.31.

The work performed herein was a recurring facet of the city's responsibility to maintain its sewer and water facilities. While the work generated was not substantial enough to require the services of permanent employees, it was frequent enough for the city to engage a plumber on an unofficial retainer. Indeed, Gordon Rogstad was only a part-time employee himself, but it was his responsibility to watch and monitor the city's water system and to notify the council of any possible breaks. His employment was very little different from that of the respondent in that respect. Yet, no serious argument would be made that Rogstad was not, in fact, an employee. Therefore, although the facts are close, since this is a review of a factual question, the board's decision should be affirmed.

TODD, Justice (dissenting).

I join in the dissent of Mr. Justice YETKA.

SCOTT, Justice (dissenting).

I concur in the dissent of Mr. Justice YETKA.