**NORTH FACE EXTERIORS, INC., Relator,**

v.

**COMMISSIONER OF JOBS AND TRAINING, Respondent.**

No. C3-90-379.

Court of Appeals of Minnesota.

July 17, 1990.

---

Daniel J. Boivin, Meshbesher, Singer & Spence, Minneapolis, for relator.

Hubert H. Humphrey, III, State Atty. Gen., Donald E. Notvik, Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by HUSPENI, P.J., and PARKER and NORTON, JJ.

## OPINION

HUSPENI, Presiding Judge.

The Department of Jobs and Training determined that roofers who worked for relator had been employees prior to January 1, 1987, and that relator was therefore obligated to pay contributions to the Minnesota Unemployment Compensation Fund based on their wages. This determination was affirmed on appeal by the employer liability referee and subsequently by the Commissioner's representative. We affirm.

## FACTS

Relator North Face Exteriors, Inc., is a roofing company organized in 1983 for the purpose of roofing new single-family homes. Builders supply the roofing, and North Face contracts with them to apply it for a fixed sum.

North Face hired experienced roofers, who were paid by weekly payroll checks based on either the number of hours worked or the amount of roofing applied. North Face withheld neither income tax nor social security; it had a general liability policy covering the workers, but no workers' compensation insurance.

North Face assigned workers to jobs, but they were free to leave a job before its completion, and to work for other roofing companies or directly for builders. Workers used their own hand tools. Two North Face supervisors inspected the jobs to insure the quality and timeliness of the work, and moved workers according to job requirements.

## ISSUES

1. Was the finding that roofers who worked for relator prior to January 1, 1987, were employees rather than independent contractors supported by the evidence?

2. Was this finding arbitrary and capricious?

## ANALYSIS

The court of appeals may, by writ of certiorari to the commissioner, review all questions of law and fact presented by the record in accordance with chapter 14. Minn.Stat. § 268.12, subd. 13(4) (1988). Chapter 14 gives the court several options:

[T]he court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the [relator] may have been prejudiced because the administrative

finding, inferences, conclusion, or decisions are: * * *

(e) Unsupported by substantial evidence in view of the entire record as submitted; or

(f) Arbitrary or capricious.

Minn.Stat. § 14.69 (1988). Relator claims that his substantial rights are prejudiced in that, as a result of the Commissioner's finding, he will be obliged to pay taxes on the wages in question. To prevail, relator must demonstrate that the finding was either unsupported by substantial evidence or arbitrary and capricious.

This court explained its standard of review of agency decisions in *M.T. Properties, Inc. v. Alexander*, 433 N.W.2d 886, 893 (Minn.App.1988), *pet. for rev. denied* (Minn. Feb. 22, 1989):

All agency decisions receive a presumption of regularity; the burden of proof is on the challenger to establish that the agency's decision was improperly reached. Deference is shown to agency expertise, lest the court substitute its judgment for that of the agency.

This court may reverse or modify an administrative agency's decision if it finds that the decision is not supported by substantial evidence, which is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, or more than a scintilla of evidence. The substantial evidence test requires the reviewing court to evaluate the evidence relied on by the fact finder in view of the entire record as submitted.

(Citations omitted.) Cases distinguishing between employees and independent contractors are often factually close. *See, e.g., Lakeland Tool and Engineering, Inc. v. Engle*, 450 N.W.2d 349, 353 (Minn.App. 1990). The Commissioner's decision can be overturned on the grounds of lack of substantial evidence only if the evidence is so inadequate that it amounts to a mere scintilla, or that no reasonable mind could find it adequate to support the conclusion that the roofers working for relator were his employees.

■ 1. Relator argues that the roofers he paid were independent contractors, and

therefore outside Minn.Stat. § 268.04, subd. 12, which states:

"Employment" means (1) Any service performed * * * by * * *

(c) any individual who is a servant under the law of master and servant or who performs services for any employing unit, *unless such services are performed by an independent contractor.*

(Emphasis added.) Both parties cite *Speaks, Inc. v. Jensen*, 309 Minn. 48, 50–51, 243 N.W.2d 142, 144 (1976) for the factors to consider in distinguishing employees from independent contractors:

(1) [t]he right to control the means and manner of performance; (2) the mode of payment; (3) the furnishing of material or tools; (4) the control of the premises where the work is done; and (5) the right of the employer to discharge. In determining whether the status is one of employee or independent contractor, the most important factor * * * is the right of the employer to control the means and manner of performance.

Whether relator had the right to control the roofers' performance is thus the most significant question here. Thirteen factors to consider in answering it are set forth in Minn.R. 3315.0555, subp. 3 (1989):

A. Authority over assistants.

B. Compliance with instructions.

C. Oral or written reports.

D. Place of work.

E. Personal performance.

F. Existence of a continuing relationship.

G. Right to discharge.

H. Set hours of work.

I. Training.

J. Amount of time.

K. Tools and materials.

L. Expense reimbursement.

M. Satisfying requirements of regulatory and licensing agencies.

Six of these factors indicate that relator had the right to control the means and manner of performance of the roofers' work. Relator furnished, and the roofers were required to comply with, his instruc-

tions (B); he determined the premises where they would work (D); they could not hire substitutes without his consent (E); he could discharge them if he judged their work deficient in quantity or quality (G); they did not work for other contractors while they were working for him (J); and they furnished only the tools customarily furnished by workers in their trade (K). Of the remaining factors, several are irrelevant: there were no assistants (A); there were no business or travelling expenses (L); and there were no agency requirements (M). While it is true that relator did not require reports (C); maintain continuing relationships with roofers (F); set their hours of work (H); or train them (I); there is nevertheless substantial evidence that he had control of their manner and means of performance, and so satisfied the first of the *Speaks* criteria.

Minn.R. 3315.0555, subps. 3(D), (G), and (K), discussed above, respectively duplicate factors (4), (5) and (3) from *Speaks*. Therefore, only factor (2) of *Speaks*, mode of payment, remains to be considered. Mode of payment is one of eight "additional factors" to be considered in determining whether a relationship is one of employer-employee. Minn.R. 3315.0555, subp. 2 provides:

> B. Compensation on job basis. A person working in employment is usually paid by the hour, week, or month. Payment on a job basis is customary where the worker is independent.

The roofers here were paid on an hourly or piecework basis. This mode of payment resembled that of employees, rather than independent contractors who are customarily paid by the job. Relator's argument that since he did not withhold for taxes or fringe benefits, the roofers were not employees, begs the question being addressed in this matter. *See Hammes v. Suk*, 291 Minn. 233, 236, 190 N.W.2d 478, 481 (1971).

Seven "additional factors" to be considered in determining whether an employer-employee relationship exists are set forth in Minn.R. 3315.0555, subp. 2, and provide in relevant part:

> A. Availability to public: independent contractors make their services available and offer them to the public.
>
> \*     \*     \*     \*     \*     \*
>
> C. Realization of profit or loss: independent contractors may realize profit or suffer loss as a result of their services; employees do not.
>
> D. Obligation: independent contractors are required to work to the end of a job; employees may quit during a job.
>
> E. Substantial investment: independent contractors may make a substantial investment and furnish all facilities; employees furnish only tools common to the trade.
>
> F. Simultaneous contracts: independent contractors may be under contract to more than one firm at one time; however, employees also may work for a number of people or firms.
>
> G. Responsibility: independent contractors are responsible for themselves; employing units are usually responsible for the behavior of employees.
>
> H. Services in the course of the employing unit's organization, trade, or business: employees perform services which are a part or process of the employing unit's business; independent contractors may perform ancillary services.

The referee focused on these factors in making the disputed determination.

> The roofers \* \* \* performed services on a continuous basis, and while they did perform some services for other contractors, performed primarily for [relator] (F). What is clear from the evidence is that these individuals worked at the direction of [relator]. [Relator] had the right to pull them off of a job before it was completed and send them to another job based upon the wishes of [relator] (D). This is not a situation where a roofer contracted to perform a single job for [relator] for a set price determined by contract. [Relator] is in the roofing business and hired individuals to perform the roofing work. The services are totally within the scope of [relator's] business operation and are not tangential to it (H).

There was no indication that the roofers advertised their services (A); they were paid for the work they did, and realized neither profit nor loss (C); they made no investment other than the tools of their trade (E); and relator was responsible for those he had hired, and therefore inspected them (G).

In light of the five *Speaks* factors, the additional factors in Minn.R. 3315.0555, subp. 2, and the factors for determining control in subpart 3, we believe there is substantial evidence to support the Commissioner's determination that relator's roofers were his employees.

■ 2. Relator also argues that the Commissioner's decision was arbitrary and capricious, an exercise of its will rather than its judgment. *Lakeland*, 450 N.W.2d at 353. He supports his argument with the assertion that roofers for "all the other roofing contractors" were independent contractors and not employees. However, relator's argument must fail on two bases. First, he furnishes no specific example of a fact situation analogous to this case where the workers were deemed independent contractors. Secondly, we agree with the observation of the Commissioner's representative that:

> [T]he fact that other roofing companies may not operate within the confines of the law, that is, pay unemployment taxes on workers who are actually employees under the law of master and servant, is no ground for relief to [relator].

### DECISION

The Commissioner's decision that the roofers who worked for relator prior to January 1, 1987, were his employees is neither unsupported by substantial evidence nor arbitrary and capricious.

Affirmed.