Gordon LOCKWOOD, Respondent,

v.

TOWER TERRACE MOBILE
HOMES, Employer,

AID Insurance Company, Relator,

Western Casualty and Surety
Company, Respondent,

State Treasurer, Custodian of the Special
Compensation Fund, Respondent.

No. 48528.

Supreme Court of Minnesota.

March 16, 1979.

Sahr, Kunert & Tambornino, and John L. Tambornino, Minneapolis, for relator.

Donald A. Hillstrom, Minneapolis, for Lockwood.

Lasley, Gaughan, Reid & Stich, W. M. Lasley, Minneapolis, for Western Cas. and Sur. Co.

Warren Spannaus, Atty. Gen., Winston Ehlmann, Spec. Asst. Atty. Gen., St. Paul, for State Treas., Custodian of Special Compensation Fund.

PER CURIAM.

Certiorari on the relation of Tower Terrace Mobile Homes and AID Insurance Company to review a decision of the Workers' Compensation Court of Appeals awarding Tower's employee, Gordon Lockwood, compensation for temporary total disability from August 11, 1975, to March 22, 1976, for temporary partial disability thereafter to November 4, 1976, the date of hearing before the compensation judge, and for temporary total or temporary partial disability thereafter as employee's condition warrants.

Relator challenges the finding that employee was not injured in August 1975 and that his disability was instead a manifestation of symptoms caused by an injury sustained in February 1973, when AID was Tower's compensation carrier. The effect of this finding was to relieve Western Casualty and Surety Company, Tower's compensation carrier in August 1975, and the Special Compensation Fund, made a party at Western's request, of any liability for the compensation awarded. Although relator contends that this finding has no basis in the evidence, we conclude that the finding has substantial evidentiary support.

Employee sustained a serious low back injury in 1964 which resulted in some permanent impairment. On February 13, 1973, while helping to rebuild a damaged mobile home, he reinjured his low back in the same area that had been injured earlier and felt severe pain. Conservative treatment did not improve his condition. Following tests that disclosed a disc defect, Dr. Lester Carlander performed a laminectomy in May 1973, after which employee's back improved at first but soon became painful again. Dr. G. D. Crislip, who had treated employee for several years, prescribed pain relievers, a muscle relaxant, a back support, ultrasound treatments, and therapy. He returned to work part time in September 1974, still taking medication and wearing the back support. He did chiefly light work and claimed he was working full time by the following summer, although he continued to have flare-ups of back pain which would require medical attention. A compensation claim against Tower Terrace and AID was settled, and in June 1975, pursuant to a stipulation admitting that employee had sustained an injury on February 13, 1973, arising out of and in the course of his employment, he was awarded temporary total disability for 83.4 weeks and permanent partial disability of 20 percent of the spine.

On August 6, 1975, employee again suffered sharp disabling pain in his low back after driving his employer's truck over a curb. He could not work after this incident. The next day he consulted Dr. Crislip, who hospitalized him for a few days for "recurrent low back pain," and prescribed medications and a new back support. Employee also received outpatient therapy two or three times a week for several months, and his condition improved slowly. He returned to work part time on March 22, 1976.

Employee testified that he had not done any lifting on August 6, but "supposed" he might have bounced the truck when driving it over the curb. He gave no history to medical witnesses of this bouncing having occurred, although Dr. Crislip said employee told him he had been driving a truck and doing some minor lifting. In the doctor's opinion, the condition for which he treated employee in August 1975 and thereafter was causally related to his work.

Dr. Crislip also said that he and Dr. Carlander had rated employee as having a 20-percent permanent partial disability of the back in 1973 but had raised that rate to 30 percent in April 1975 because of the difficulties employee had experienced in working. Dr. Crislip viewed the August episode as a manifestation and aggravation of the underlying back problem employee had from his prior disability and surgery.

Dr. Carlander testified that employee had chronic low back instability and that the August 1975 incident was one of numerous and similar incidents. He thought the temporary total disability following the August 1975 incident resulted from a combination of that incident and employee's postsurgical condition but could not apportion responsibility between these causes. Dr. Carlander agreed that employee had a 30-percent permanent partial disability of his low back, and he attributed 75 percent of his condition to the 1964 injury and 25 percent to the incident in February 1973 which had led to surgery. He also said employee did not mention any injury in August 1975, but that temporary total disability could be "related to a specific work situation or lift at the time which temporarily flares this up and then [reverts] back to his previous condition after a period of time."

Dr. David W. Johnson, a neurosurgeon, testified that he examined employee in July 1974 on behalf of AID and then thought employee had a 20- to 25-percent permanent partial disability of his low back. He examined employee again on June 29, 1976, and rated his permanent partial disability at 25 percent. He said employee had told him that in August of 1975 he "had a quite acute flare-up of his symptoms without any specific injury." Dr. Johnson was asked to assume that employee had a continuing history of flare-ups of back spasms and pain after Dr. Johnson's first examination in July 1974, and that in August 1975 he had driven down a ramp about 6 inches from top to bottom, slightly steeper than a driveway ramp. Given those assumptions, the doctor gave his opinion that the August

episode was a temporary aggravation of a preexisting condition and that during the period the aggravation lasted employee's disability was a combined result of the preexisting back difficulties and this aggravation, but that he could not apportion between these causes.

On this evidence the court of appeals found, as stated, that employee did not sustain additional personal injury in August 1975 and that his disability was a manifestation of symptoms caused by the 1973 injury. The scope of our review of this finding of fact is to determine whether there is credible evidence on which it is based, and we will not disturb it unless it is manifestly contrary to the evidence or unless consideration of the evidence and the inferences permissible therefrom would clearly require reasonable minds to adopt a contrary conclusion. *Rohr v. Knutson Const. Co.*, 305 Minn. 26, 232 N.W.2d 233 (1975). Based on these standards, the finding must be affirmed.

We are also satisfied that, contrary to relator's claim, the award of temporary partial disability was proper.

Affirmed.