**Vivian M. PALMQUIST, Widow of Luther E. Palmquist, Deceased, Respondent,**

v.

**Richard MEISTER, Relator,**

**and/or**

**Bessie Strand, surviving spouse of Eric Strand, Respondent,**

**and**

**Uninsured and State Treasurer, Custodian of the Special Compensation Fund, Respondent.**

No. 47799.

Supreme Court of Minnesota.

March 16, 1979.

Albert E. Ranum, Stillwater, for relator.

Richard M. Arney, Stillwater, Jergens, Hebert, Cass, Jepsen & Doyscher and William E. Jepsen, Stillwater, for Palmquist.

Eckberg, Lammers, Briggs & Wolff, Stillwater, for Strand.

Warren Spannaus, Atty. Gen., Thomas Lockhart, Spec. Asst. Atty. Gen., St. Paul, for State Treasurer, Custodian of the Special Compensation Fund.

PER CURIAM.

Relator, Richard Meister, obtained certiorari to review a unanimous decision awarding dependency compensation to Vivian Palmquist based on findings by the Workers' Compensation Court of Appeals that her deceased husband, Luther Palmquist, was Meister's employee at the time Palmquist sustained a fracture of his upper right arm; that the injury arose out of and in the course of his employment; and that the injury, resultant osteomyelitis, and necessary medical treatment contributed substantially to Palmquist's death from heart failure 18 months later. Relator primarily challenges the evidentiary support for these findings. Having determined that they have substantial support, we affirm.

Meister purchased a bar and restaurant in Marine on St. Croix in January 1973. He asked Eric Strand, a retired carpenter, if he would repair and remodel the building. Strand agreed to do the work for $5 an hour to be paid weekly. Meister, who was employed elsewhere, gave him a key to the premises and authorized him to order and charge materials at a local lumberyard. The projected work included the two-man task of attaching beams to the ceiling and

Strand arranged for assistance from Palmquist, also a retired carpenter, subject to Meister's approval. Meister agreed to hire Palmquist and pay him $5 an hour. Palmquist worked 2 or 3 days, receiving $90 or $100. On February 16, 1973, Meister came to the building where Palmquist, in the process of showing him the ceiling beams, fell through a·trapdoor leading to the basement stairs. Despite Meister's aid, Palmquist suffered a massive soft tissue injury to his left shoulder and fractured the neck of his left humerus. He was immediately taken to the hospital at Osceola, Wisconsin, but swelling and profuse bleeding due to anticoagulant medication taken for other problems required that treatment of the fracture be postponed.

Palmquist had a prior medical history of circulatory problems including high blood pressure with hardening of the arteries, coronary thrombosis in 1966, and hospitalization in 1971 for coronary artery insufficiency. A few days after the injury, he developed an arrhythmia (paroxysmal atrial tachycardia), followed by acute pulmonary edema and heart failure. This condition improved and on March 6, 1973, his physician, Dr. David Lemper, transferred him to St. John's Hospital in St. Paul where Dr. Donald Smiley, an orthopedic surgeon, reduced the fracture, inserting a metal pin to fix the bone in place. Palmquist returned to the Osceola hospital on March 19. An infection developed at the site of the surgical wound which did not respond to antibiotics. He was discharged from the hospital in April but continued to have difficulty with his arm. An X ray taken in August showed a bone abscess in the shoulder. After unsuccessful treatment, including opening and draining the abscess, Dr. Smiley and Dr. Lemper concluded that Palmquist had chronic osteomyelitis. Dr. Lemper referred him to the Mayo Clinic in May 1974 where an orthopedic surgeon removed dead bone. Shortly after this surgery, Palmquist again suffered pulmonary edema and a myocardial infarction. He rallied and was discharged July 5. On August 11, 1974, he died of acute congestive heart failure.

Palmquist's widow sought compensation from Meister. He denied that Palmquist had been his employee, that the arm and shoulder injury was work-related, and that the injury contributed to Palmquist's death. On conflicting evidence the compensation judge found that the decedent had been Meister's employee; that the injury arose out of and in the course of employment; and that the injury, osteomyelitis, and necessary treatment had contributed substantially to Palmquist's death. The court of appeals unanimously adopted and affirmed these findings and the award of medical and funeral expenses and dependency compensation.

In this court Meister urges, as he did below, that Strand was an independent contractor and that Palmquist was also an independent contractor or else was Strand's employee. The nature of the parties' relationship is a question of fact and we have held that if reasonable inferences may be drawn to support either conclusion, the court of appeals' finding must stand. *Lundy v. City of Worthington*, 303 Minn. 39, 226 N.W.2d 295 (1975). On several occasions we have enumerated the following factors for consideration: (1) the right to control the means and manner of performance; (2) the mode of payment; (3) the furnishing of material or tools; (4) the control of the premises where the work is done; and (5) the right of the employer to discharge. *Butler v. Blonigen Const. Inc.*, Minn., 252 N.W.2d 246 (1977); *Wangen v. City of Fountain*, Minn., 255 N.W.2d 813 (1977); *Lundy v. City of Worthington, supra.*

The court of appeals stated in the memorandum accompanying its unanimous decision:

"In applying these [tests] to the instant fact we find as follows:

"1) The right of control of the means and manner of performance here we find to be substantially dictated by Mr. Meister. He, Mr. Meister, gave the instructions to have the restaurant's decor similar in nature to the restaurants owned by relatives of his. Secondly, the mode of

payment here dictates an employee-employer relationship. Mr. Palmquist was paid by the hour, namely Five Dollars ($5.00) per hour. The furnishing of materials or tools is somewhat split. True the employee has furnished some of his tools, but the materials were furnished by the employer. The control of the premise was absolutely within the purview of Mr. Meister. Both Mr. Strand and the deceased were working on Mr. Meister's premises. The fifth criteri[on], the right of discharge, was completely within the power of Mr. Meister. This is not only true for the deceased employee but also Mr. Strand.

"Applying these tests we, therefore, arrive at the conclusion that Mr. Palmquist was an employee of Mr. Meister. It would appear that Mr. Strand occupied the same position as did the deceased employee. We also find the facts herein strikingly similar to the facts shown in Butler v. Blonigen Construction Company, supra."

█ The court of appeals recognized that the most important factor in light of the nature of the work involved was the right of the employer to control the means and manner of performance. *Hammes v. Suk,* 291 Minn. 233, 235, 190 N.W.2d 478, 480 (1971). Although Meister denied that he had that right, claiming that he merely paid the costs of labor and materials, Strand's testimony permitted the inferences that Strand had agreed to work only as an employee, that he had acted for Meister in hiring Palmquist,[1] and that Meister retained the right to control the means and manner of the carpenters' performance although he did not direct every detail of the work. We agree with the analysis of the court of appeals and emphasize the significance of Palmquist's having been hired by Meister at an hourly rate of pay.

█ Meister's second claim, that Palmquist's injury did not arise out of and in the course of employment, is plainly without merit, and his further claim that the requisite causal relation between the work-related injury and employee's death from heart failure was not established with reasonable medical certainty is not borne out by the record. The finding that the February 1973 injury resulted in chronic osteomyelitis, requiring extensive medical, surgical, and hospital treatment, has substantial evidentiary support. Two medical witnesses expressed the opinion, based on reasonable medical certainty, that the infection began at the time employee's fracture was reduced. All agreed that treatment given both the fracture and the osteomyelitis was proper and necessary. The court of appeals resolved conflicting medical opinions in making the further finding that the injury, osteomyelitis, extensive medical treatment, and pain were, as a whole, a substantial contributing factor in employee's death from acute heart failure on August 11, 1974.

Dr. Roger S. Colton, an internist, expressed the opinions that in February 1973 Palmquist's heart problems during hospitalization for the fracture were directly causally related to the injury, that his original heart disease was aggravated by the trauma and treatment associated with it, and that his death was thereby accelerated. He further stated that surgery is an extremely traumatic event, very taxing to the heart; that the myocardial infarction Palmquist suffered when he underwent surgery at Mayo on May 30, 1974, was triggered at least in part by the surgery, as well as the infection in his shoulder; and that the infarction resulted in a permanent and substantial aggravation of his underlying heart problem, weakening his heart and increasing his susceptibility to another attack. He admitted that it could not be said how much longer Palmquist would have lived in the absence of the injury, but stated with reasonable certainty that he would have lived longer than he did. He disagreed with an opinion expressed by Dr. Lemper that Palmquist's heart disease "had progressed

---

1. Meister conceded that Strand did not have authority to hire other employees without Meister's permission.

about 95 percent of its course by the time he injured his shoulder."

Dr. John O. Simenstad, one of Palmquist's regular attending physicians, also rejected Dr. Lemper's opinion. He agreed with Dr. Colton that the fall, subsequent osteomyelitis, and necessary medical treatment aggravated Palmquist's heart condition and accelerated his death. He stated that although the heart attack in 1966 weakened Palmquist's heart, it did not accelerate his death, because his condition had been stable prior to the injury. Dr. Simenstad conceded that it was impossible to estimate how much his life was shortened by the injury and subsequent medical treatment.

Dr. Alexander McEwan, also an internist, expressed the opinion that the February 1973 accident did not aggravate Palmquist's heart condition nor accelerate his death and that his disease progressed at a normal pace. He thought Palmquist's work later in 1973 and early in 1974 had been too strenuous. On cross-examination, Dr. McEwan agreed that stress may trigger heart difficulty and that surgical procedures are a recognized source of stress. He said excessive bleeding is stressful and was one of the reasons for Palmquist's heart failure and arrhythmia soon after his injury but that these episodes did not necessarily cause permanent damage to his heart. He also agreed that the surgical procedures used to reduce the fracture and to treat the osteomyelitis were proper even though surgery involved a high risk for Palmquist and that the myocardial infarction Palmquist suffered at Mayo further weakened his heart.

As the trier of fact, the court of appeals was called upon to resolve the conflicting opinions of these medical witnesses as to whether Palmquist's injury and its consequences were a substantial contributing cause of his death. The finding clearly has substantial support in the opinions of Dr. Colton and Dr. Simenstad.

Although relator objects also to the manner in which the dependency compensation was computed, we hold that the court of appeals properly applied Minn.St. 176.-011, subd. 18, in arriving at Palmquist's weekly wage. Other issues raised do not merit discussion.

Respondent Palmquist is allowed attorneys fees of $350.

Affirmed.