Judith A. SANDAL, widow of Owen J.
Sandal, deceased, Relator,

v.

TALLMAN OIL COMPANY and Fidelity
& Casualty Company of New York,
Respondents,

Withnell Oil Company and State Auto
and Casualty Underwriters,
Respondents.

No. 48527.

Supreme Court of Minnesota.

July 13, 1979.

Cahill, Gunhus, Streed, Grinnell, Jeffries
& Klinger and Gunder Gunhus, Moorhead,
for relator.

Thysell, Gjevre & McLarnan, Moorhead,
for Tallman Oil Co. et al.

Van Eps & Gilmore and Curtis C. Gilmore, Minneapolis, for Withnell Oil Co. et al.

Heard before OTIS, TODD, and KENNEDY, JJ., and considered and decided by the court en banc.

OTIS, Justice.

This is an appeal by Judith A. Sandal from a Workers' Compensation Court of Appeals affirmance of an order which determined that no further dependency benefits were payable on her claim. The claim had been accepted by the decedent Owen J. Sandal's employer and insurer,[1] and pay-

---

1. The employer, Withnell Oil Company, and its insurer, State Auto & Casualty Underwriters, accepted the claim. Although a subsequent employer, Tallman Oil Company, and its insur-

ments had been made until Compensation Judge Joseph Murray ruled, upon approving attorneys fees, that the payments exceeded the maximum allowed under Minn.St. 176.-111, subd. 21 which applies to dependents who are also entitled to social security survivor benefits.

The employee's widow urges that Judge Murray improperly raised the statute as an affirmative defense to her claim on behalf of the respondents and misconstrued the statute's measure of maximum payment. She contends that where an employee dies from a secondary complication, as here alleged, maximum payment is measured by the weekly wage at the time of the complication rather than the time of the original injury. As our examination of the record convinces us that the fact and amount. of her social security benefits were not in dispute, we hold that it was proper to apply the statute and, further, that maximum payment was properly measured by the earlier wage.

Owen Sandal contracted lead poisoning at age 19 in 1959 after two years of part-time work with leaded gasoline at a service station. His first claim for workers' compensation benefits resulted in an award for temporary total disability in 1961. On appeal, an order was issued appointing neutral medical examiners to determine Sandal's condition and whether it was work-related. The order noted that multiple sclerosis was suspected and that ulcerative colitis had been detected.

The medical report filed with the Industrial Commission diagnosed "chronic encephalopathy, toxic," with no multiple sclerosis. No mention was made of the colitis. The commission's decision ultimately released in June 1962 awarded temporary total disability benefits from 1959 and continuing, with liability apportioned between two employers and their insurers.

In 1963 Sandal succeeded in redetermining the weekly wage at $75 instead of $40, but was denied an increase to the maximum rate on the ground that he had not yet sustained 350 weeks of temporary total disability, at which point it would be deemed permanent, nor established any permanent disability in fact. Moreover, he was successfully attending college and might prove gainfully employable in the future. Although Sandal was severely incapacitated, he attended college part-time and earned a degree in accounting and business administration in 1967.

He filed a claim in 1969 for permanent partial disability and was found to have been disabled for more than 350 weeks and to be permanently disabled to the extent of 30 percent in each leg, 20 percent in one arm, and 15 percent in the other. He was awarded payment for the permanent partial disability as well as the statutory maximum healing period of 104 weeks of temporary total disability, but in accordance with usual commission practice he was not allowed to recover for the balance of the 350 weeks of temporary disability in addition.

Although no appeal was taken, Sandal petitioned to set aside or amend in July 1972 on the ground that this court had recently decided that recovery for 350 weeks of temporary total disability in addition to permanent partial was permitted. See, *Mechling v. Jasper Stone Co.* 293 Minn. 309, 198 N.W.2d 561 (1972). The petition was denied by the court of appeals and subsequently affirmed by this court in *Sandal v. Tallman Oil Co.* 298 Minn. 264, 214 N.W.2d 691 (1974).

Payments under the 1969 order were made through March 1974 when notice of discontinuance was filed on the ground that Sandal had been employed for several years. He filed a new claim in 1975 for six weeks of temporary total benefits, and for permanent total and supplemental benefits, asserting that the lead poisoning resulted in chronic colitis which had degenerated into cancer of the colon by June 1975. At that

er, Fidelity Casualty of New York, had been held in prior litigation to be responsible for 10.9 percent of Owen Sandal's original illness, the

parties apparently agreed that State Auto & Casualty Underwriters would made the payments.

time Sandal allegedly was earning over $1,500 per month. Both employers and insurers denied the allegation that the complications were work-related.

Owen Sandal died on January 5, 1976, and his widow filed a dependent's petition. Withnell and State Auto decided to accept the claim with dismissal of the petition after initially denying liability,[2] and the insurer paid temporary total disability and supplemental benefits from June 1, 1975, to January 6, 1976, and dependency benefits of $50 weekly from the date of death to March 28, 1977. It also withheld 25 percent in attorneys fees.

Judge Murray requested justification of the fees as independent of the 25 percent approved in the employee's prior claims and held them payable in an order which also determined that the insurer had no further liability at that time for fees or benefits. The memorandum stated that the widow and two children were receiving $55.29 weekly in social security benefits each, and calculated that the total of $165.87, combined with the $50 weekly from workers' compensation, exceeded the statutory maximum of 100 percent of Sandal's $75 weekly wage at the time of the injury causing death. The court of appeals affirmed the order and the case is here on certiorari to review that decision.

In *Reichert v. Victory Granite Co.* 249 Minn. 407, 410, 82 N.W.2d 497, 500 (1957), we confirmed the rule in this jurisdiction that the law in effect at the time of an employee's death governs the determination of maximum benefits for the dependents. The version of the statute in effect at the time of Owen Sandal's death provided in part:

"The following provisions shall apply to any dependent entitled to receive weekly compensation benefits under this section as the result of the death of an employee, and who is also receiving or entitled to receive benefits under any government survivor program:

"(a) The combined total of weekly government survivor benefits and worker's compensation death benefits provided under this section shall not exceed 100 percent of the weekly wage being earned by the deceased employee at the time of the injury causing his death; provided, however, that no state worker's compensation death benefit shall be paid for any week in which the survivor benefits paid under the federal program, by themselves, exceed 100 percent of such weekly wage; * * * ."

Minn.St.1976 § 176.111, subd. 21. The threshold issue before us is whether it was proper to invoke the statute on the facts established.

Counsel for respondents contends that the fact and amount of federal survivor's benefits is not ascertainable from the claim petition itself and thus no issue on that matter is raised by the pleadings. Such benefits are neither determined nor paid immediately upon death, and they fluctuate with the circumstances of the dependents. The effect of the statute upon workers' compensation payments, therefore, necessarily fluctuates accordingly.

Only when federal benefits to which a dependent is entitled are ascertainable may application of the statutory maximum of workers' compensation benefits be appropriate. If the amount of either type of benefit or the amount of the wage at the time of injury causing death is disputed, the parties may litigate those fact issues. Whether the statutory limit is then to be applied depends upon the amounts finally determined.

---

2. Respondents denied that Sandal's death was related to the lead poisoning just as they had denied the connection between the lead poisoning and the colitis and cancer in the employee's 1975 claim. Although relator's counsel has urged vigorously in these proceedings that the colitis was found to be work-related in earlier litigation, we can discover no evidence of such a finding in the record. Counsel's remark at oral argument, moreover, that substantial medical expenses for the colitis were awarded in 1969 is not supported by the order which merely deducts from respondents' credit $1149 in medical expenses paid by the employee. Even if the colitis connection had been litigated, the issue of the causal relation between the colitis and the cancer was not. Nevertheless, respondents conceded that the death was related to the lead poisoning upon accepting the dependency claim.

In the case before us, Mrs. Sandal did not dispute at the court of appeals or here that she and her children were entitled to receive the amount of social security funds recognized by Judge Murray. Further, she did not dispute Judge Murray's determination that the weekly wage at the time of the 1959 injury, as found in prior litigation, was $75 although she had alleged in her petition that it was $90. Thus no fact question existed with regard to these amounts, and the court of appeals was required to apply the law according to the undisputed evidence. See, Minn.St. 176.371. The court implicitly affirmed Judge Murray's invocation of the statute by affirming his interpretation and we hold that it was properly invoked.

Whether the 1959 amount or a higher wage earned in 1975 was the correct measure of maximum benefits is readily determined by the fact that Owen Sandal's cancer has never been characterized as other than a secondary complication of the original injury to his central nervous system. No allegation of a new and independent injury has ever been made in this case nor could it, as respondents contend, while recovery was sought against them—the 1959 employers. In the absence of such an allegation, the toxic encephalopathy is the only injury causing death, no matter how remote or whether hastened by degeneration into another disease.

Since the statute nowhere suggests a wage measure at the time that a single injury has degenerated into an immediate cause of death, Judith Sandal's argument that the statute is ambiguous where a lengthy delay occurs is without merit. No ambiguity can exist where no more than one injury is involved.

Our cases which she cites for the proposition that the purpose of dependents' benefits is to compensate for the loss of support at the time of death do not involve a wage issue. In *Reichert, supra*, the question was whether the dependents were entitled to an additional award from the special compensation fund. In *Todeva v. Oliver Mining Co.* 232 Minn. 422, 45 N.W.2d 782 (1951), we determined the nature and scope of a nonresident alien's right to dependent's benefits.

A closer case, not cited by the parties, can also be distinguished. In *Lewis v. Connolly Contracting Co.* 196 Minn. 108, 114, 264 N.W. 581, 584 (1936), involving a death four years after an injury, we compared workmen's compensation with wrongful death proceedings and stated in dicta:

" * * * Under the Workmen's Compensation Law the compensation is based on the wage of the decedent at the time of his death, and a definite proportion of such wage is awarded, depending on the degree of dependency and the relationship of the dependents to the deceased employee."

The express purpose of the statement was to show that the amount of death benefits recoverable depended upon contingencies unknown when the employee made a compensation settlement, and that such benefits stemmed from the separate right of the dependents arising upon the employee's death four years after the disability occurred. 196 Minn. 115, 264 N.W. 584. The issue was whether the settlement could bar dependents' rights under the Workmen's Compensation Act, but the merits were not before the court and there was no suggestion that two different wages would be in issue. Thus even so strong a statement does not, on those facts, support Mrs. Sandal's position.

She reads our remarks in *Reichert* and *Todeva, supra*, regarding a dependent's pecuniary interest in the normal continuation of the employee's life to imply a continuity of lifestyle. Whereas the style might continue when the effective wage rate coincides with the time of death, we declared only that the purpose of the dependency provisions is to secure separate rights to continued support arising at the time of death and at the amounts, not the wages, then in effect. See, *Reichert v. Victory Granite Co.* 249 Minn. 407, 410, 82 N.W.2d 497, 500 (1957); *Todeva v. Oliver Iron Mining Co.* 232 Minn. 422, 427, 45 N.W.2d 782, 787 (1951). The *Todeva* court also cited

*Dale v. Shaw Motor Co.* 206 Minn. 99, 101, 287 N.W. 787, 788 (1939), which expresses a concern that the proper amount be available to the correct parties at the time of death. The *Dale* court stated that the policy is to "insure that financial support will be available when the employee dies and income from that source ceases." 206 Minn. 101, 287 N.W. 788.

While Sandal's widow urges that the unjust result of applying the lower, earlier wage is inconsistent with rate adjustment provisions in the act and with the fact that her husband received supplemental benefits, she overlooks two important points. First, the adjustment for supplemental benefits is calculated on the basis of the original wage and an average wage at a later time.[3] Second, she has not contested the rate of her own benefits which were computed on the basis of the $75 wage.[4] Her position leads to the untenable conclusion that two wages control the dependency provisions: one to determine the amount recoverable and one to establish the limit where social security is also payable.

We agree with the court of appeals that the ruling is harsh in this instance, but are convinced that as between different wages at the time of injury and at the time of death from complications, the latter is not and has never been controlling. In the more likely situation, an employee would be earning a lower wage by the time his disease had degenerated, and the maximum would be calculated at a higher amount.

As respondents acknowledge, they are obligated to resume payments if and when the combined weekly federal and compensation benefits fall below the $75 figure.

Affirmed.

WAHL, J., took no part in the consideration or decision of this case.

---

3. See, Minn.St. 1974, § 176.132, which applied to Sandal and provided in part: "Subdivision 1. Eligible recipients. An employee who has suffered personal injury for which benefits are payable under section 176.101 and who has been totally and continuously disabled for more than 104 weeks shall be eligible for supplementary benefits as hereinafter prescribed after 104 weeks have elapsed and for the remainder of his continuous total disablement.

"Subd. 2. Amount. (a) *The supplementary benefit payable under this section shall be the difference between the amount the employee receives on or after July 1, 1974, under section 176.101, subdivision 1 or subdivision 4, and $70 per week as adjusted.* Beginning on July 1, 1974, and on each succeeding January 1, the supplementary benefit payable under this section shall be adjusted by multiplying the total adjusted figure then in effect by a fraction, the denominator of which shall be the average weekly wage of Minnesota employees as computed by the Minnesota department of employment services for the October fifteen months prior to the January of the year on which the adjustment is to take effect, and the numerator shall be the average weekly wage of Minnesota employees as computed by the Minnesota department of employment services for the October three months prior to the January of the year on which the adjustment is to take effect, and raising the product to the next highest full dollar amount. Should the basis for computation of such wage statistics be changed from year to year the commissioner of labor and industry shall interpolate what reasonable and comparable figures shall be used to make the adjustment." (Italics supplied.)

4. Respondents paid her dependent's benefits at $50 weekly, which represents the statutory 66⅔ percent of the $75 wage. See, Minn.St. 176.111, subd. 8, which sets forth 66⅔ percent of the daily wage at the time of injury for a spouse with two dependent children.