**Wallace C. HALVERSON, Respondent,**

v.

**LARRIVY PLUMBING & HEATING CO., et al., Relators,**

and

**A. G. O'Brien Plumbing & Heating Co., et al., Respondents,**

and

**Travelers Insurance Co., intervenor, Respondent.**

**No. 81–745.**

Supreme Court of Minnesota.

July 23, 1982.

Hansen, Dordell, Bradt & Odlaug, St. Paul, for relators.

Michael I. Cohen, Duluth, for Halverson.

Hanft, Fride, O'Brien & Harries and Gaylord Swelbar, Duluth, for A. G. O'Brien Plumbing & Heating Co., et al.

Thomas R. Thibodeau, Duluth, for Travelers Ins. Co.

TODD, Justice.

Wallace Halverson was exposed to asbestos fibers over a period of years while employed by a series of employers. He was ultimately diagnosed as suffering from asbestosis and as a result of the disease was

forced to quit working. The Workers' Compensation Court of Appeals overturned the compensation judge's finding that the last employer was liable for all compensation and found that the second-to-the-last employer should pay the benefits. We affirm.

Wallace Halverson was employed for 30 years as a plumber. In 1948 he went to work as a plumber's helper for respondent A. G. O'Brien where he worked with asbestos insulation. From that year until 1960 he worked at various times for O'Brien, Young & Krause Plumbing and Heating, and Sher Plumbing and Heating. He worked around dust and insulation during those years. In 1960 and 1961 Halverson did general plumbing for two other employers. From 1962 to 1970 he was employed solely by Sher Plumbing doing general plumbing and heating. There he was subject to daily asbestos exposure.

From 1970 through 1975 Halverson was employed solely by relator Larrivy Plumbing and Heating Company. In October of 1976 he began working for both Larrivy and respondent A. G. O'Brien. From February, 1977 until he stopped working completely in May or June of 1979 he was employed only by O'Brien. During the time that Halverson was employed by Larrivy and O'Brien he worked on individual projects for each employer and was exposed to asbestos at each job site.

The employee first noticed that he had trouble breathing during a swimming outing in 1975. Thereafter he experienced occasional breathing problems. In August of 1977 Halverson went to the doctor and complained that he had suffered from shortness of breath during the past two years. In September he went to see a pulmonary specialist, Dr. Clark. Dr. Clark diagnosed Halverson as having asbestosis, a condition caused by scarring of the lungs by asbestos. The employee did not work from September of 1977 to January of 1978. He went back to work for O'Brien Plumbing half days until he finally quit work completely in May or June of 1979.

A hearing was held on January 22, 1980 before a compensation judge. The judge found Halverson to have suffered a 40% permanent partial disability of the lungs as a result of asbestosis. A. G. O'Brien, as the place of last exposure, was ordered to pay benefits to Halverson. The Workers' Compensation Court of Appeals, in a unanimous decision, vacated in part the finding and determination of the compensation judge and substantiated its finding that Halverson's employment with Larrivy Plumbing substantially contributed to his disability and its determination that Larrivy was liable for all compensation.

The issue on appeal is whether the record supports the court of appeals' finding that Larrivy, the second-to-the-last employer, was liable for the full amount of the compensation because the exposure to asbestos while employed by O'Brien, the last employer, was not a substantial contributing factor.

■ We have held that, in occupational disease cases, the employer and the insurer on the risk at the time the employee becomes disabled is responsible for Workers' Compensation Benefits. *Robin v. Royal Improvement Co.*, 289 N.W.2d 76 (Minn. 1979). Apportionment of liability may be allowed only in those rare cases in which medical testimony permits a precise allocation of liability among different employers. *Michels v. American Hoist & Derrick*, 269 N.W.2d 57, 59 (Minn.1978). However, one exception to the "last employer" rule must be recognized: for an employer and insurer to be liable for benefits, there must be some causal connection between the employee's occupational disease and the work which he performed for the employer. An "occupational disease" is defined as "a disease arising out of and in the course of employment * * *," and the disease arises out of the employment "only if there be a direct causal connection between the conditions under which the work is performed." Minn.Stat. 176.011, subd. 15 (1980). Liability is most often assigned to the insurer on the risk at

the time the employee becomes disabled "if the employment at the time of disability was of a kind contributing to the disease." 4 A. Larson, *Workmen's Compensation Law* § 95.21 (1981).

We have not yet expressly defined the extent to which an employee's disability or death from an occupational disease must be causally related to his last employment. In non-occupational disease cases we have held that an employer may be assigned liability as long as the employment can be said to have been "an appreciable or substantial contributing cause" of the employee's disability, *Roman v. Minneapolis Street Railway Co.*, 268 Minn. 367, 380, 129 N.W.2d 550, 558 (1964), or a "substantial contributing cause of his death." *Palmquist v. Meister*, 277 N.W.2d 376, 380 (Minn.1979). In the present case the court of appeals properly applied a "substantial contributing cause" test in establishing employer and carrier liability.

■ The court of appeals relied on expert medical testimony regarding the latency period of asbestosis in determining that the employment with O'Brien was not a substantial contributing cause of the disability here. The scope of our review of that finding is to determine whether it is based on credible evidence and it will not be disturbed "unless it is manifestly contrary to the evidence" or unless the evidence "would clearly require reasonable minds to adopt a contrary conclusion." *Lockwood v. Tower Terrace Mobile Homes*, 279 N.W.2d 51, 53 (Minn.1979).

■ The medical evidence in this case consists of the deposition testimony of Dr. Terrance Clark, a board certified pulmonary specialist who examined and treated Wallace Halverson in 1977. Dr. Clark testified that Wallace Halverson's current lung and chest disease was caused by exposure to asbestos during the period from 1952 through August of 1977. In response to the question of whether the exposure from 1976 to August, 1977 aggravated or accelerated

the development of the lung condition, Dr. Clark stated that an x-ray taken in 1975 already showed signs of the disease but that it was possible that the later dust exposure aggravated the problem such that the employee became clinically ill in 1977. However, when questioned by opposing counsel, Dr. Clark stated that the latency period for asbestosis is 5 to 40 years, depending upon the intensity of the exposure. He testified that the recent exposures would not affect the asbestosis until at least 5 years in the future:

> Clark: [T]he disease that we measure now reflects predominantly those exposures that occurred fifteen or twenty years ago. Any subsequent exposures are likely to produce disease which we cannot yet measure.
>
> Attorney: And would not yet affect him or impair his ability until they reach the point where you can measure them?
>
> Clark: Yes.

The medical evidence indicates that the exposure during the time Halverson was employed by O'Brien may aggravate the disease but that the effects of that exposure will not be measurable for at least 5 years, and that the employee's present condition is the result of exposure 5 to 20 years ago. The court of appeal's finding that O'Brien is not liable for compensation is supported by sufficient evidence and is affirmed.

PETERSON, J., took no part in the consideration or decision of this case.