Albert H. CREPEAU, deceased, by
Dorothy E. CREPEAU, widow,
Respondent,

v.

KROST INSULATION COMPANY,
INC., et al., Relators,

Paul W. Abbott Company, Inc., et al., Respondents,

Home Insurance Company, et al., Respondents,

Hickory Insulation Company, et al., Respondents,

Federal Cartridge Corporation, et al., Respondents,

Blue Cross & Blue Shield, Intervenor, Respondent,

Travelers Insurance Company, Respondent.

No. CX-82-1239.

Supreme Court of Minnesota.

April 15, 1983.

Larkin, Hoffman, Daly & Lindgren, and Michael C. Jackman, Minneapolis, for relators.

Hertogs, Fluegel, Sieben, Polk Jones & Laverdiere and Richard A. Laverdiere, Hastings, for Crepeau.

Cousineau, McGuire, Shaughnessy & Anderson and Thomas P. Kieselbach, Minneapolis, for Paul W. Abbott Co., Inc., et al.

Joseph M. Stocco, Minneapolis, for Home Ins. Co., et al.

Koll & McCoy and Andrew J. Morrison, St. Paul, for Hickory Insulation Co., et al.

Pustorino & Pederson and Peter J. Pustorino, Minneapolis, for Federal Cartridge Corp., et al.

SCOTT, Justice.

Albert Crepeau, an insulation worker for many years and an employee of Krost Insulation Company in 1977, retired at that time when he became eligible for social security. In 1978 and 1979 he returned to full-time work for Krost long enough to earn the maximum allowable without reduction of social security benefits. In November 1979 he complained of chest pain, but felt somewhat better in a short time and returned to work again in February 1980. In less than 2 weeks his symptoms worsened and he became so fatigued that he was forced to quit. Several months later asbestosis and a malignant mesothelioma in the lining of his right lung were discovered; the cancer caused his death on November 7, 1980. A compensation judge awarded his widow, respondent Dorothy Crepeau, workers' compensation for temporary total disability, a 60% permanent partial disability of the body as a whole due to lung injury, and dependency benefits against Krost and its carrier during 1978, Minnesota Mutual Fire and Casualty Company. On their appeal a unanimous Workers' Compensation Court of Appeals affirmed (although subsequently increasing the dependency award), and Krost and Minnesota Mutual sought review in this court, contending that liability was erroneously imposed on them and also insisting that respondent was not entitled to maximum dependency benefits. We affirm in part, reverse in part, and order reinstatement of the compensation judge's award for dependency benefits.

We find no merit in relator Minnesota Mutual's claim that the evidence does not support imposition of liability against it rather than Home Insurance Company, Krost's insurer in 1980, or prior employers

and insurers. That liability was based on findings that employee's illnesses were caused by employment exposure to asbestos and that his last substantial exposure to that substance occurred in 1978. Both findings have substantial evidentiary support in the record as a whole.

With respect to causation, the medical experts agreed that exposure to asbestos caused employee's diseases. Several expressed the opinions, relying on a recognized "lag time" between exposure to asbestos and the development of cancer, that only exposures which had occurred 15 to 30 years earlier were substantially related to the employee's cancer. Employee's family physician, Dr. John Salchert, and the only medical witness who was a specialist in oncology, Dr. William Hedrick, thought that all exposures prior to the fall of 1979, when employee first had symptoms of chest pain, played a role in causing the cancer. Dr. Hedrick did not agree that there is inevitably a lag time between an exposure causing the disease and the development of the cancer. He felt that employee's tumor had probably begun in November 1979 and did not know whether his exposure to asbestos for a day or so in February 1980 had hastened the development of the tumor.

The finding that employee's last substantial exposure occurred in 1978 has substantial support in the evidence that during his work in 1979 employee *may* have been exposed to asbestos for not more than a few days and that in 1978 he had had known exposure to old asbestos pipe coverings in an extremely dirty, unventilated work area for 4 weeks.[1] The evidence thus supports the finding that employee's last substantial exposure to asbestos occurred in 1978 and the imposition of liability on Minnesota Mutual. *Halverson v. Larrivy Plumbing & Heating Co.*, 322 N.W.2d 203 (Minn.1982); *Busse v. Quality Insulation Co.*, 322 N.W.2d 206 (Minn.1982).

Krost and Minnesota Mutual next argue that respondent should not have been awarded maximum dependency benefits be-cause, following his retirement in 1977, employee purposely limited his earnings each year to the amount he could earn without incurring reduction of his social security payments and thus would not have earned more than $5,000 in 1980 if he had been able to work. They insist that the legislature could not have intended that respondent receive weekly dependency compensation of $244, the amount awarded her.

Although we are well aware that an award of maximum dependency benefits is in no sense a realistic approximation of the support respondent received from employee's annual earnings following 1977, we are compelled to conclude that it was required by the pertinent statutes. Under Minn. Stat. § 176.111, subd. 1 (1980), employee's surviving spouse is "conclusively presumed to be wholly dependent," and section 176.-111, subd. 6 (1980), directs that she receive "50 percent of the daily wage at the time of the injury of the deceased." Nor do the provisions relating to wage calculation, found in Minn.Stat. § 176.011, subds. 3 and 18 (1982), contain a formula addressing the circumstances presented here. Section 176.-011, subd. 3, provides in part:

"Daily wage" means the daily wage of the employee in the employment in which he was engaged at the time of injury * *. If the amount of the daily wage received or to be received by the employee in the employment in which he was engaged at the time of injury was irregular or difficult to determine, or if the employment was part time, the daily wage shall be computed by dividing the total amount the employee actually earned in such employment in the last 26 weeks, by the total number of days in which the employee actually performed any of the duties of such employment, provided further, that in the case of the construction industry * * * the weekly wage shall not be less than five times the daily wage.

Section 176.011, subd. 18, provides in part:

"Weekly wage" is arrived at by multiplying the daily wage by the number of

---

1. Although employee encountered similar conditions for a day or two in February 1980, no medical witness expressed the opinion that that exposure had affected employee's condition.

days and fractional days normally worked in the business of the employer for the employment involved. If the employee normally works less than five days per week or works an irregular number of days per week, the number of days normally worked shall be computed by dividing the total number of days in which the employee actually performed any of the duties of his employment in the last 26 weeks by the number of weeks in which the employee actually performed such duties * * *. * * * The maximum weekly compensation payable to an employee, or to his dependents in the event of death, shall not exceed 66⅔ percent of the product of the daily wage times the number of days normally worked, provided that the compensation payable for permanent partial disability * * * and for permanent total disability * * * or death under section 176.111, shall not be computed on less than the number of hours normally worked in the employment or industry in which the injury was sustained * * *.

The compensation judge made findings that employee sustained a personal injury on June 14, 1978, the last day he worked in that year, and that he had received an hourly wage of $14.41 in 1980, of $13.76 in 1979, and one not exactly determinable in 1978 but sufficient to entitle him and respondent to the maximum compensation rate of $197 in effect on the date of injury. She then awarded $2,949.07 for temporary total disability for approximately 13.32 weeks at the rate of $221.35 per week, representing two-thirds of employee's wage loss of $4,423.60 sustained in 1980. She awarded $59,100 representing 300 weeks of permanent partial disability at the rate of $197 per week for the 60% permanent partial disability of the body as a whole he had sustained due to his lung injury. Finally, she awarded dependency benefits at the rate of $226 per week, subject to statutory adjustment, after determining that employ-

ee's wage on the date of the injury was at least twice that amount.

Although the Court of Appeals increased the dependency award to $244 per week, based on its determination that the weekly wage in the insulation industry at the time of employee's death was $576.40, it otherwise affirmed the compensation judge's findings and determination.

Minnesota Mutual argues earnestly that employee was inherently a part-time employee at the time of his death and that his daily wage should have been computed by dividing the total he earned in the 26-week period prior to his disability in February 1980 by the days worked. Their argument ignores the fact that employee worked full time rather than the reduced hours which in common understanding constitute part-time employment. *Cf. Sawczuk v. Special School Dist. No. 1,* 312 N.W.2d 435 (Minn.1981).

■ The insurer also urges that section 176.011, subd. 18, should be construed to restrict the dependency award to employee's actual earnings, but nothing in this provision warrants that construction, and the language stating that "compensation payable for permanent partial disability * * or death under section 176.111, shall not be computed on less than the number of hours normally worked in the employment or industry in which the injury was sustained" clearly refers to the number of hours generally worked by employees rather than those worked by an individual one. We are compelled to conclude that under our present statutes the employee was properly considered a full-time employee for purposes of determining the amount of compensation due respondent.[2]

■ The Court of Appeals erred, however, in determining that respondent should receive a dependency award based on the industry wage on the date of employee's death in November 1980. The governing statute, Minn.Stat. § 176.111, subd. 6

---

**2.** We are aware that at least one other court has refused to so treat an employee who has purposely limited his earnings to avoid reduction of social security benefits. *See Bennett v.*

*Gary Smith Builders,* 271 S.C. 94, 245 S.E.2d 129 (1978). In that decision the court applied a statutory formula which has no counterpart in our Workers' Compensation Act.

(1980), plainly states that she was entitled to receive dependency benefits equal to "50 percent of the daily wage at the time of the injury of the deceased." While employee did not sustain compensable disability until February 1980, he had sustained the underlying injury through exposure to asbestos by June 14, 1978, and the compensation judge correctly used that date in determining the amount of dependency compensation. *Cf. Sandal v. Tallman Oil Co.*, 281 N.W.2d 507 (Minn.1979). We therefore reverse the dependency award and order that the award made by the compensation judge be reinstated.

Respondent is awarded attorney fees of $400.

Affirmed in part and reversed in part.