Bruce A. HAUGLID, Relator,

v.

SANDBERG ERECTION COMPANY
and Aetna Life and Casualty
Company, Respondent.

No. C7-85-1343.

Supreme Court of Minnesota.

Jan. 3, 1986.

Phillip L. Powell, Minneapolis, for relator.

Janet Monson, Minneapolis, for respondent.

KELLEY, Justice.

At issue in this workers' compensation proceeding brought by employee to obtain additional temporary partial disability benefits is whether the employer's compensation insurer properly adjusted those benefits pursuant to Minn.Stat. § 176.645 (1978). The compensation judge determined that the statutory provision had been properly interpreted by the insurer. Upon employee's appeal a unanimous Workers' Compensation Court of Appeals affirmed. Employee then sought review here, contending that his interpretation of the statute is the correct one. We affirm.

The parties stipulated to the facts. Employee sustained an injury on September 9, 1978, in the course of his employment as a journeyman iron worker. He was then earning an average weekly wage of $446. By December 1984 journeyman iron workers received $20.74 an hour, of which $17.10 was designated as wages under a collective bargaining agreement. Thus, their weekly wage was $684. Because of employee's injury he was forced to seek lighter work, and the employer has paid him temporary partial disability benefits pursuant to Minn.Stat. § 176.101, subd. 2 (1978), which provides that such benefits shall be 66⅔% of the difference between the daily wage of a worker at the time of injury and the wage he is able to earn in his partially disabled condition. Minn.Stat. § 176.645 (1978), in effect on the date of employee's injury, provides for an anti-inflation adjustment of periodic compensation benefits in the following language:

For injuries occurring after October 1, 1975 for which benefits are payable under section 176.101, subdivisions 1, 2 and 4, and section 176.111, subdivision 5, the amount due the employee or any dependents shall be adjusted in accordance with this section. On October 1, 1976, and

each October 1 thereafter the amount due shall be adjusted by multiplying the amount due prior to each adjustment by a fraction, the denominator of which is the statewide average weekly wage for December 31, 21 months prior to the adjustment and the numerator of which is the statewide average weekly wage for December 31, nine months prior to the adjustment. For injuries occurring after October 1, 1975, all adjustments provided for in this section shall be included in computing any benefit due under this section. Any limitations of amounts due for daily or weekly compensation under this chapter shall not apply to adjustments made under this section. No adjustment increase made on October 1, 1977 or thereafter under this section shall exceed six percent a year. In those instances where the adjustment under the formula of this section would exceed this maximum the increase shall be deemed to be six percent.

The insurer interpreted this statute to require the following calculation: .

(Weekly wage at time of injury—present wage) $\times$ ⅔ $\times$ Inflation    Adjustment = TPD benefit.

Employee contends that the statute requires the following calculation:

(Weekly wage $\times$ Inflation Adjustment—Actual Wages) $\times$ ⅔ = TPD benefit.

Employee's calculation derives from our decision in *Redland v. Nelson's Quality Eggs, Inc.*, 291 N.W.2d 371 (Minn.1980), in which the issue faced by the court was how to apply the adjustment provision in section 176.645 to dependency benefits payable under section 176.111, subd. 5, but by reason of section 176.111, subd. 21, subject to coordination with OASDI benefits received by the dependents. In *Redland* the coordination required by section 176.111, subd. 21, meant that, because the deceased employee's weekly wage of $185 had been less than the OASDI weekly benefits of $211.91 received by the dependent children, they were not presently entitled to any workers'

compensation. We recognized that the purpose of section 176.645 is to overcome the effects of inflation upon workers' compensation periodic benefits received by disabled employees and by dependents. In order to harmonize section 176.645 and section 176.111, subd. 21, we rejected a literal application of the adjustment provision, saying:

A literal reading of the statute means that the Redland children would never receive workers' compensation benefits no matter how high inflation becomes. The legislature could not have intended such an absurd result.

291 N.W.2d at 375.

We then went on to state:

In the alternative, one could multiply the amount that would be due without the social security offset, $123.33, by the applicable percentage and give the dependents that amount. For example, 6% of $123.33 = $7.40. The problem with this method is that it is not flexible enough to take into account increases and decreases in social security benefits as section 176.111, subdivision 21, dictates. The advantage of this system, however, is its ease of application.

The most logical way to read subdivision 21 and section 176.645 in harmony is to increase the *weekly wage* by the applicable percentage. If decedent had lived, his wages would have increased with inflation. The term "amount due" in section 176.645 should be interpreted to mean the total benefits due, *e.g.*, $185.

*Id.*

Although we styled the figure of $185 as "total benefits due," as it was under section 176.111, subd. 21, it was also the wage that the employee had been earning at the time of his death. In 1981 the legislature amended the statute to provide that adjustments be made on the anniversary date of the employee's injury [1] and to substitute the words "total benefits" for the word "amount" wherever "amount due" had

---

**1.** Retroactive application of that provision was held in *Broos v. Portec, Inc.*, 376 N.W.2d 688

(Minn.1985), to impair the employer's vested right to a fixed liability for disability benefits.

been used. Employee takes the position that the change was a signal of legislative approval of *Redland* and the extension of its holding to the adjustment of all periodic disability benefits. Thus, he urges that the amendment requires annual adjustment of the employee's preinjury wage before deduction of his present wage to determine the amount of temporary partial disability compensation to which he is entitled. His argument also appears to assume that this part of the amendment merely clarified the meaning of the statute in effect on the date of his injury. We are not convinced that this is true, nor can we agree that the change proves beyond any doubt that the intent of Minn.Stat. § 176.645 (1978) was to apply the inflation factor to the employee's preinjury wage rather than to the disability benefits he is receiving on the date of adjustment. The language of the statute, whether before or after amendment, does not expressly require that the adjustment factor be applied to the preinjury wage. We agree with the compensation judge that it cannot be said that the result reached by the insurer's construction of this statute is clearly contrary to the legislative intent.

At the same time, we are impressed with the analysis made by the compensation judge concerning the effects of the insurer's application of the statute. As he demonstrates as the result of the fact that an injured employee's earnings in a job of lesser economic status than his preinjury occupation increase due to inflation, the benefits payable for temporary partial disability decrease if the preinjury wage remains fixed and, once the inflationary postinjury wage equals the preinjury wage, the employee's right to temporary partial disability benefits terminates. This is true even though the wages of employees performing the kind of work he had done prior to injury have also increased due to inflation and are considerably greater than the employee's present wage. Assuming that the intent of section 176.645 is to increase compensation benefits in order to protect employees from the effects of inflation by maintaining their relative purchasing power over the years, that intent is not entirely carried out by the insurer's calculation. The compensation judge added also:

It would also appear that a literal interpretation of Minn.Stat. § 176.645 seemingly does not necessarily provide a financial incentive to employers and their insurers to rehabilitate injured workers for jobs of the same economic status, and would tend to encourage the re-employment of injured employees in jobs of lesser economic status simply because the effects of inflation and the rate thereof will substantially reduce or eliminate an employer's legal liability to pay wage loss benefits for temporary partial disability under Minn.Stat. § 176.102, subd. 2, over a period of time. Such a result further would not appear to be in harmony with Minn.Stat. § 176.101, subd. 1, which provides for the employee's rehabilitation to return to jobs which produce an economic status as close as possible to that they would have enjoyed without disability.

The WCCA gave little consideration to these problems, deciding merely that because this case does not involve section 176.111, subd. 21, the interpretation of the statute in *Redland* is not applicable. The WCCA added also that the result obtained by the insurer's calculation is not "absurd" because the employee has received temporary partial disability benefits and these were increased somewhat by the insurer's calculation.

In our view the problems pointed out by the compensation judge are substantial. We have doubts that the insurer's interpretation of section 176.645 will entirely achieve the purpose of that provision. This interpretation may be inimical to the legislative policy and purposes expressed in section 176.102. We have recognized that the provisions of the Workers' Compensation Act are complementary and in construing its provisions have held that each is viewed as supplementary to the others. *Nordman v. Goldfines*, 270 N.W.2d 766 (Minn.1978); *Christensen v. State, Department of Conservation*, 285 Minn. 493, 175 N.W.2d 433 (1970).

However, the legislature has not plainly and clearly provided in Minn.Stat. § 176.-645, even as amended, that the adjustment provided therein is to be applied to increase an employee's preinjury wage rather than the periodic benefits received by the disabled employee or by his dependents when the work injury has resulted in death. Since the insurer's construction of the statute is not in fact contrary to manifested legislative intent, we affirm albeit with some reluctance. We do call to the attention of the legislature the difficulties associated with that construction. The legislature may wish to reconsider how best to effectuate the purpose of Minn.Stat. § 176.645 and how to harmonize it with other provisions of Minn.Stat. ch. 176.

Affirmed.

PETERSON, J., took no part in the consideration or decision of this case.

