**William G. MOELLER, deceased employee, by Phyllis MOELLER, Relator,**

v.

**SERVICE PLUMBING & HEATING and Transamerica Insurance Co., Respondents.**

**No. C1–91–1881.**

Supreme Court of Minnesota.

April 3, 1992.

Michael J. Koshmrl, Diana L. Brennan, Erstad & Riemer, P.A., Minneapolis, for relator.

Gary M. Hagstrom, Deborah K. Sundquist, Meagher & Geer, Minneapolis, for respondents.

YETKA, Justice.

Relator, Phyllis Moeller, appeals from a Workers' Compensation Court of Appeals' decision affirming the compensation judge's determination that, under Minn. Stat. § 176.645 (1990), inflation adjustments to dependency benefits are made on the first anniversary of injury *following the employee's death.* Relator argues that section 176.645 requires inflationary adjustments be made retroactively to the first anniversary of the employee's injury. We

agree with relator and reverse the decisions below.

The parties stipulated to the following facts for purposes of resolving the question of law presented in this case. On January 5, 1985, William G. Moeller sustained an admitted work-related occupational disease—asbestosis. At that time, Mr. Moeller was earning an average weekly wage of $632. The employer and the insurer admitted primary liability for Mr. Moeller's disease and paid workers' compensation benefits pursuant to a Stipulation for Settlement and an Award on Stipulation served and filed on September 13, 1988.

On December 28, 1988, Mr. Moeller died, leaving his spouse, Phyllis Moeller, as his sole dependent for purposes of receiving dependency benefits under the Workers' Compensation Act. Mr. Moeller's work-related asbestosis was a substantial contributing factor to his death.

On November 13, 1989, relator filed a claim petition for dependency benefits. The employer and insurer admitted liability and, pursuant to Minn.Stat. § 176.111, subd. 6 (1990), commenced payment of dependency benefits at the rate of $316 per week, reflecting 50 percent of Mr. Moeller's average weekly wage on the date of injury.

The employer and the insurer contend that, pursuant to Minn.Stat. § 176.645, relator's weekly dependency benefit should be adjusted on January 5, 1989, the first anniversary of injury after the date of death. Relator contends that the benefit should be adjusted retroactively to January 5, 1986, the first anniversary of injury.

 A dependent's right to benefits vests on the date of the employee's death and is governed by the law in effect on that date. *Borchardt v. Biddick,* 306 N.W.2d 817, 818 (Minn.1981) (*citing Schwartz v. Talmo,* 295 Minn. 356, 360, 205 N.W.2d 318, 321, *appeal dismissed,* 414 U.S. 803, 94 S.Ct. 130, 38 L.Ed.2d 39 (1973)). The rate at which dependency benefits are paid is based on the employee's weekly wage on the date of injury. Minn.Stat. § 176.111, subd. 6 (1988); *Crepeau v. Krost Insulation Co.,* 332 N.W.2d 191, 195 (Minn.1983);

*Sandal v. Tallman Oil Co.,* 281 N.W.2d 507, 509–10 (Minn.1979).

As a dependent spouse, relator here is entitled to benefits under Minn.Stat. § 176.-111, subd. 6 (1990):

> If the deceased employee leaves a dependent surviving spouse and no dependent child, there shall be paid to the spouse weekly workers' compensation benefits at 50 percent of the weekly wage at the time of the injury for a period of ten years, *including adjustments as provided in section 176.645.*

(Emphasis added.)

Those dependency benefits are adjusted for inflation under Minn.Stat. § 176.645 (1990), which reads in pertinent part:

> Subdivision 1. **Amount.** For injuries occurring after October 1, 1975 for which benefits are payable under section 176.-101, subdivisions 1, 2 and 4, and section 176.111, subdivision 5, the total benefits due the employee or any dependents shall be adjusted in accordance with this section.

> Subdivision 2. **Time of first adjustment.** For injuries occurring on or after October 1, 1981, the initial adjustment made pursuant to subdivision 1 shall be deferred until the first anniversary of the date of the injury.

The Workers' Compensation Court of Appeals affirmed, on two grounds, the compensation judge's determination that dependency benefits are initially adjusted on the first anniversary of injury *after the employee's death.* First, the appeals court held that section 176.645 applies only to benefits that have become *due (i.e.,* those which have vested). The adjustment for inflation cannot occur until some time after the employee's death—the anniversary of the date of injury—because dependency benefits do not actually become *due* until the employee dies. Second, the appeals court held that, because Minn.Stat. § 176.-111, subd. 6 limits the period of dependency benefits to 10 years, the legislature inferentially intended that only ten inflation adjustments would occur and that those adjustments logically should correspond to

the years during which the spouse receives payments.

We recognize that section 176.645 applies once benefits have vested, but note that the inquiry into *when* benefits vest is distinct from the determination of *how much* those benefits are, and *when they are adjusted* initially for inflation. Indeed, the date of the employee's injury is used to determine the rate at which dependency benefits are paid. The "[t]ime of first adjustment" under section 176.645 does not distinguish between inflation adjustments applicable to an employee's and a dependent's benefits, and we do not believe the legislature intended to make that distinction. Moreover, we think that the legislature, in enacting the inflation adjustment provision, intended to increase benefits for the period between injury and death *in addition to* the 10 years during which the dependent receives benefits. Although characterized as "retroactive," the adjustment for inflation between the first anniversary of injury and the date of death simply reflects the present value of a dependency benefit based on the wage at the time of injury. In other words, in this case, the $316/week in 1985 benefits is equivalent to about $361/week in 1988 benefits when adjusted for inflation.

This court most recently addressed the adjustment of benefits under section 176.645 in *Hauglid v. Sandberg Erection Co.*, 379 N.W.2d 87 (Minn.1986). There, in defining the purpose and parameters of the adjustment-of-benefits provision, we said that "the purpose of section 176.645 is to overcome the effects of inflation upon workers' compensation periodic benefits received by disabled employees *and by dependents.*" *Id.* at 89 (emphasis added). Furthermore, we assumed that "the intent of section 176.645 is to increase compensation benefits in order to protect employees from the effects of inflation by maintaining their relative purchasing power over the years * * *." *Id.* at 90.

In *Hauglid*, the employee argued that the adjustment under section 176.645 applied to the employee's pre-injury wage before deducting his present wage to determine his temporary partial disability compensation. *Id.* Under the insurer's construction, the adjustment applied to the employee's periodic benefits rather than his pre-injury wage. We "ha[d] doubts that the insurer's interpretation of section 176.-645 [would] entirely achieve the purpose of that provision"; nevertheless, we adopted the insurer's construction because

the legislature has not plainly and clearly provided in Minn.Stat. § 176.645 * * * that the adjustment provided therein is to be applied to increase an employee's preinjury wage rather than the periodic benefits received by the disabled employee *or by his dependents when the work injury has resulted in death.*

*Id.* at 90–91 (emphasis added). Thus, in *Hauglid*, we tied the adjustment provision to the benefit which the employee or dependent is to receive because that construction was not manifestly contrary to the legislature's intent in enacting the measure. *But see Redland v. Nelson's Quality Eggs, Inc.*, 291 N.W.2d 371 (Minn.1980) (adjustment of dependency benefits tied to employee's wage at time of death when coordinating governmental survival benefits).

In this case, relator does not argue that the adjustment applies to the employee's pre-injury wage. Consistent with *Hauglid*, relator would apply the adjustment only after the dependency benefit has been calculated. Also consistent with the *Hauglid* interpretation of section 176.645's intent, relator seeks to overcome "the effects of inflation" on her dependency benefit. The respondents' position here goes one step beyond that of the insurer in *Hauglid*. The respondents would not only apply the adjustment provision to the benefits to which relator is entitled, but also postpone that adjustment, regardless of the time elapsed between injury and death, until the first anniversary of injury after death.

■ The respondents' construction does not account for the effects of inflation on dependency benefits. Rather, we think the respondents' calculation represents no more than a nominal increase in the amount of benefit to which a dependent is entitled. Dependency benefits provide an employee's dependent with a percentage of

income based on the financial support that the dependent received from the employee's earnings. *Harrison v. Schafer Constr. Co.*, 257 N.W.2d 336, 338 (Minn. 1977). The respondents' construction here would decrease that percentage for each year the employee would be fortunate enough to live after being injured.

Finally, respondents argue that, in *Crepeau v. Krost Insulation Co.*, 332 N.W.2d 191 (1983), we tacitly rejected the construction of section 176.645 which relator urges here. In *Crepeau*, as here, the employee died of asbestosis after the date of his injury. *Id.* at 192. In determining the rate at which the dependency benefit was to be paid, the compensation judge did not have exact figures regarding the employee's wage at the time of injury. Consequently, the compensation judge awarded the dependent $226 per week based on the conclusion that the employee's wage was *at least twice that amount.* *Id.* at 194. In calculating the dependency benefits, however, the compensation judge did not adjust the award retroactively to the first anniversary of the employee's injury.

The Workers' Compensation Court of Appeals increased the widow's award based on the determination that the proper measure of dependency benefits was 50 percent of the weekly wage in the industry. *Id.* at 194. In reversing that increase in benefits, this court affirmed the compensation judge's award based on the employee's wage at the time of injury. However, other than affirming that award "subject to statutory adjustment," we neither addressed nor were presented with the issue of when dependency benefits are initially adjusted under section 176.645. *Id.* at 194. Accordingly, *Crepeau* does not preclude our interpretation today.

The manifest legislative intent of section 176.645 compels the conclusion that inflation adjustments are to be made retroactively to the first anniversary of the employee's injury in order to reflect, realistically, the effect of inflation on dependency benefits. Therefore, we reverse the decisions of the compensation judge and the Workers' Compensation Court of Appeals.

COYNE, J., took no part in the consideration or decision of this matter.